Tuttle et al. *v.* Wilson.

24  553
158  282
24    553
90a  622

NELSON TUTTLE *et al.*, Plaintiffs in Error, *v.* JOHN L. WILSON, Defendant in Error.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

An affidavit of a plaintiff in execution to obtain a *ca. sa.*, which declares that the debtor has refused, and still does refuse, to surrender his "property and estate" in satisfaction of an execution, is insufficient.

The case of *Fergus* v. *Hoard*, 15 Ill. R. 361, examined and modified. Held, that the affidavit should aver that the defendant had estate, lands and tenements, goods or chattels, liable to be seized and sold, specifying them, and that he refuses to surrender them after a personal demand made; if a demand is practicable.

An averment that a party has refused to surrender his property, does not imply that he has it. A demand should be made, when practicable.

A judgment debtor has a right to offer real estate in satisfaction of an execution, before his personal property can be levied upon.

Although an officer executing a *ca. sa.* upon an insufficient affidavit, may protect himself by pleading the process, yet if he should refuse to execute it, he would not be liable; nor is he liable for an escape under it.

An officer is not liable for an escape under a void process, or for a refusal to execute it; otherwise, if it is only voidable.

THE declaration in this case, which was an action of debt for an escape, contains two counts, both of which, substantially, state that the plaintiffs in error, on the 10th day of April, 1857, recovered a judgment in the Cook County Court of Common Pleas, against one Anthony A. Thiele, for the sum of $733.09, damages, and $6.60, costs ; and that for the having of execution of the said judgment, the plaintiffs, on the first day of June, 1857, issued a writ of *capias ad satisfaciendum*, and delivered the same to the defendant in error, who was sheriff of Cook county ; that the said sheriff arrested the said Thiele, who afterwards escaped, through the negligence of the said sheriff.

To this declaration the defendant filed seven pleas :

1st. *Nil debit.*

The 2nd and 5th pleas allege, that the affidavit upon which the *ca. sa.* issued was insufficient, and set out the same in full. This affidavit is copied at length in the opinion of the court.

The 3rd, 4th, 6th and 7th pleas allege, that the affidavit was untrue, and that the plaintiffs knowingly made and contrived the same for the purpose of wrongfully imprisoning the said Thiele.

To the 2nd, 3rd, 4th, 5th, 6th, and 7th pleas, the plaintiffs filed a demurrer, which, upon argument, was sustained to the 3rd, 4th, 6th, and 7th, and overruled as to the 2nd and 5th.

The plaintiffs elected to stand by their demurrer, and judgment was given thereon for the defendant.

The plaintiffs in error assign for error,

That the said Superior Court erred in overruling the demurrer of the said plaintiffs in error to the said second and fifth pleas of the said defendant in error.

That the court erred in not sustaining the said demurrer, as to said second and fifth pleas.

That the court erred in rendering judgment against the plaintiffs in error, on said demurrer, instead of against the defendant in error.

HELM & CLARK, for Plaintiffs in Error.

FARWELL, SMITH & THOMAS, for Defendant in Error.

BREESE, J. The right to personal liberty is one of the most valuable and most cherished rights appertaining to man in society, and one of which he cannot be deprived, except by the judgment of his peers, or by the law of the land. . In the barbaric age of the law in this country, the unfortunate debtor could be deprived of this inestimable right, if he failed to pay an honest debt. His creditor could keep him in *arcta custodia*

for the misfortune of being poor. This was so in all the States of this Union, whose organic laws had been established prior to the year eighteen hundred and eighteen, except Tennessee. In that year the constitution of this State was adopted, which contained, as one of its fundamental principles, alike beneficent and just, this provision: "No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud." Art. 8, Sec. 15, (Scates' Comp. 54.)

In looking back to our earliest legislative records, it will be perceived that the first General Assembly which met under this constitution, failed to observe this then novel provision, for, at the second session, they passed the act entitled, "An act regulating the practice in the Supreme and Circuit Courts of this State, and for other purposes," which was approved on the 22nd March, 1819, by the first section of which the process by capias was the only process recognized or provided, in all actions of debt, or upon the case, founded upon any writing obligatory, bill or note in writing, for the payment of money, and in all actions of covenant and detinue, and appearance bail required. The officer taking the bail was required, if demanded, to deliver to the person or persons acknowledging the recognizance, a bail-piece, in the words and form following:

—— County, to wit—C. D., of the County of ——, aforesaid, is delivered to bail, on a *cepi corpus*, unto E. F., of the County aforesaid, at the suit of A. B., the —— day of ——, in the year ——.

Thus did E. F. become the jailor of C. D., and thus early, at the threshold of our existence as a State, was the constitution of the State violated, an apology for which may, and will, be found in the fact, that like legislation prevailed in all, or most, of the States by which we were then surrounded. Few, if any of them, at that early day, save Tennessee, had abolished that odious practice, which came down to them from the mother country, and is there still practiced, of arresting the unfortunate debtor, and committing him to the four walls of a prison, or placing him in the custody of his bail, as at the common law. The special bail was required to be a householder, resident within the State, and, if the writ issued out of the Circuit Court, of the county in which the court was held, and of sufficient property. In some cases, if an affidavit was not made to hold to bail, a summons issued, as now practiced. The act was very stringent, providing, "if, upon a *capias*, the sheriff shall take the body of the defendant, he shall commit him to the common jail of the county, or take a bond to himself from the

defendant, with sufficient surety or sureties, conditioned that the defendant, if judgment be given against him, shall pay and satisfy the costs and condemnation of the court, or surrender his or her body," (for females had no exemption,) in execution for the same, or that the sureties will do it for him. The bail, on becoming uneasy, could surrender his principal by applying to the sheriff or clerk for a bail-piece, under which he could arrest the defendant, and surrender him to the custody of the sheriff, who, for his own security, incarcerated him. All the rigor known to the common law marked all the preliminary proceedings, and when judgment was obtained, if the property sold on the *fi. fa.*, or extended by a *levari facias*, did not satisfy it, the plaintiff could have execution for the residue against the defendant's body, lands or goods, without any affidavit and on his own motion.

The same General Assembly, however, did provide, by an act passed at the same session, for a discharge from arrest, and for the surrender of the debtor's property. In the first section of that act it is declared, that no person shall be imprisoned for debt, who shall deliver up his or her estate, in the manner pointed out in that act.

And the same act permitted any person who was, or might thereafter be in confinement in any of the jails of the State on final process, and who was willing to give up all his estate, real and personal, for the benefit of his creditors, to present a petition to the Circuit Court, setting forth the causes of his imprisonment, with a list of his creditors, with the amounts due to each, and a schedule of his property, real and personal, and if found that he had acted fairly, an order for his discharge was granted, and his property passed into the hands of an assignee appointed by the court.

To incarcerate a debtor at that day, no affidavit was required, but to our credit be it said, the law did not so remain but for a short time, for at the first session of the second General Assembly it was declared, by an act then passed, " that from and after the passage of that act (January 5, 1821,) appearance bail should, in no case, be required, but in all cases where it had been required, special bail was to be taken," which was merely this indorsement on the writ: " I do hereby acknowledge myself to be special bail for the within named defendant in this action; witness my hand and seal," etc.; but in no case could this bail be required, unless the plaintiff should first make affidavit before the clerk of the Circuit Court, to be filed in his office, that he verily believed that he would be in danger of losing his demand, or the benefit of whatever judg-

ment he might obtain.   No change was made in proceedings on final process, as regards the person of the defendant.

At the third session in 1823, by an act approved February 17, it was enacted, that no person should thereafter be imprisoned for debt, except for the causes set forth in that act.   That when any execution shall issue upon any judgment obtained before any justice of the peace or judge of the Circuit Court, it should be the duty of the officer serving it, to levy upon and sell all the property, real, personal, or mixed, or so much of it as might be necessary to satisfy the execution, that might be subject to execution ;  and if it appeared by the return of the officer that the defendant had no property, his body could not be arrested by any process whatever, unless the plaintiff, or his agent or attorney, should swear before some justice of the peace or judge of the Circuit Court, that he verily believed that the defendant intended, or was about to remove or abscond out of the county in which the judgment was obtained, or in which the defendant resides ;  in which case, it was lawful to issue a *ca. sa.* against the body of the defendant, and commit him to jail, there to remain until he took the oath of insolvency, as prescribed by the act of 1821 ;  or gave sufficient security that he would not depart from the county for two years—which might be renewed biennially, at any time thereafter, upon a similar affidavit.   The security might, at any time, be released by surrendering the body of the defendant in execution.   It was further provided, that if the plaintiff, his agent, or attorney, should make affidavit before a justice of the peace, the truth thereof to be ascertained by a jury of not less than six householders, nor more than twelve, to be summoned and sworn by the justice, or if before the Circuit Court, the clerk should issue a *venire* to the sheriff, to summon a jury to appear at the next term, on the first day of the term, that he verily believes that the defendant had hid, concealed or transferred any equity, chose in action, or any species or description of property whatever, for the purpose of defrauding the plaintiff, the body of the defendant could be arrested and committed to jail, there to remain until he should be released by taking and subscribing the oath of insolvency, as described in the act above referred to.

At the fourth session, in 1825, it was provided that no execution should issue against the body of a debtor, except in the manner pointed out in the act of 1823, above quoted.

Thus the law remained, with slight alterations, until the revision of the statutes in 1845, with which the profession is familiar.   The affidavit to hold to bail, required by the first section of chap. 14, (Scates' Comp. 236), does not differ essentially from the act of 1821.   The bail has the right to arrest

and surrender his principal, and no civil suit can be commenced on a bail bond until a *ca. sa.* shall have issued against the principal, and returned not found.

By chapter 52, (Scates' Comp. 582), under which the *ca. sa.* in this case issued, it is provided " whenever any debtor shall refuse to surrender his or her estate, lands, tenements, goods or chattels, for the satisfaction of any execution which may be issued against the property of any such debtor, it shall and may be lawful for the plaintiff in such execution, or his or her attorney or agent, to make affidavit of such fact before any justice of the peace of the county ; and upon filing such affidavit with the clerk of the court from which the execution issued, or with the justice of the peace who issued such execution, it shall be lawful for such clerk, or justice of the peace, as the case may be, to issue a *ca. sa.* against the body of such defendant in execution."

The affidavit in this case, which was held insufficient, is as follows : " Nelson Tuttle, being duly sworn, says, that he is one of the plaintiffs in the above suit, and further says, that on the tenth day of April, A. D. eighteen hundred and fifty-seven, at the April term of the said court, the said plaintiffs recovered a judgment against said defendant, Anthony A. Thiele, in said cause, for the sum of seven hundred and thirty-three dollars and nine cents, with the costs of suit, taxed at six dollars and sixty cents, and execution was issued on said judgment on the thirtieth day of May of said year, directed and delivered to the sheriff of said county, which execution said sheriff, by John H. Dart, his deputy, has returned wholly unsatisfied, and this affiant says that said Anthony A. Thiele has refused, and still does refuse, to surrender his property and estate in satisfaction of said execution, and further says not."

A marked departure from the statute will be perceived in this affidavit. It does not allege that the defendant in the execution has refused to surrender " his estate, lands, tenements, goods or chattels," in satisfaction of the execution, but only his " property and estate."

These terms do not necessarily include lands, tenements, goods or chattels, or any other species of property liable to be taken in execution. A person's property and estate, may consist entirely of mere choses in action, which cannot be seized and sold upon a *fi. fa.*

In the case of *Fergus* v. *Hoard*, 15 Ill. R. 361, the affidavit was in strict compliance with the statute in this regard, and the majority of the court held it was sufficient to authorize the *ca. sa.* We have examined the ruling in that case, critically, and are disposed to think it should be somewhat modified—that

Tuttle et al. *v.* Wilson.

something more should be required to make the affidavit sufficient. It should in the first place aver that the defendant had estate, lands and tenements, goods or chattels, liable to be seized and sold on execution, specifying them as near as may be, and that he refused to surrender them in execution, after a personal demand upon him so to do, if a demand be practicable. We do not think the averment that he has refused to surrender his property, necessarily implies that he has property liable to execution, nor do we think he should be considered so in default, as to justify seizing his body, until a demand has been made upon him to produce or show property, or some excuse given for not making a demand, as that he had absconded, or concealed himself, so that a demand could not be made.

How can he be said to refuse, until a demand is made ? Such averments in the affidavit, would make a case contemplated by the constitution. Having property liable to execution, and a personal demand being made to turn it out to be levied on, and a refusal, or an excuse shown for not making a demand, makes out one case specified in the constitution, and they would make out the other also, as raising a strong presumption of fraud. A party can hardly be said to refuse to deliver up his property, until a demand has been made upon him, where it is practicable to make a demand. It is quite possible he may not know of the writ being in the hands of the officer, so that he could answer to it. Nor is it exactly fair to infer in such a case that a defendant in execution has estate, lands and tenements, goods or chattels, from the simple averment that he refuses to deliver up his " property and estate." It is true, he could not refuse to deliver it up, unless he had it, but the allegation is all important, that he actually had property liable to be seized and sold on execution. It cannot be presumed, and a mere implication is insufficient.

We have said, at this term, in the case of *Pitts* v. *Magie*, and *Pitts* v. *Reiter*, that it is the right of a judgment debtor to turn out real estate upon an execution against him, before his personal property is taken, and the sheriff who seizes his personal property without giving him an opportunity to turn out realty, when that is practicable, exceeds the line of his duty, and the court will sternly rebuke the conduct of an officer who conceals from the debtor the existence of the execution in his hands for the purpose of preventing him from turning out real estate till he can seize his personal property, and that it is the first duty of an officer having an execution against a party, to apply to him personally for payment whenever that is practicable, and the officer should be held responsible to the party aggrieved for a neglect of this duty, whenever special damages result from it.

If so, in such case, how much more important it is, that, before the body can be seized, and the debtor deprived of his personal liberty, that a personal demand should be made upon him, whenever practicable ?

We do not think the case of *Stafford* v. *Low*, 20 Ill. R. 152, decides this case. That was an action against Stafford as one of the sureties on a bail bond, for the appearance of his principal, to answer in an action of assumpsit.

To defeat the bond, Stafford pleaded, that the affidavit on which the *capias* issued, was not in compliance with the constitution, as expounded by this court in the case *ex parte* Jesse N. Smith, 16 Ill. R. 349, and was therefore void. That being void, avoided Stafford's bond.

We deem the case of *Gorton* v. *Frizzel*, 20 Ill. R. 291, more in point. That was an action, like this, for an escape on final process on a *ca. sa.* There the writ itself, showed that it was void. There is no pretense in that writ, for the affidavit on which it issued is set out in the writ, that the defendant had lands and tenements, goods and chattels, liable to execution, and that he had refused to surrender them on demand made, where a demand is practicable, to satisfy the execution, or any circumstances raising the presumption of fraud.

This affidavit is destitute of those necessary averments, and we cannot consider " property and estate," as found in it, equivalent to the terms used in the statute—" estate, lands and tenements, goods and chattels,"— so that there was no foundation for the *ca. sa.* The clerk had no legal authority to issue it, and it was void on its face. Though it might protect the officer, he still might refuse to execute it, or having executed it, he would not be liable in an action for an escape, for he would not have the right of recapture. He could not justify his act, under a void writ, nor acquire any rights under it, or make it the foundation of an action in any form. It is hardly necessary to cite authorities upon this point. In *Shirly* v. *Wright*, 3 Salkeld, 700, it was held by Holt, C. J., If a writ of execution bear *teste* out of term, the sheriff is justifiable, and yet shall not be liable to an action of escape, for it is a void writ.

In an action against a sheriff for an escape, he may defend himself by showing that the process under which the arrest was made was void. *Howard et al.* v. *Crawford*, 15 Georgia, 424.

In the case of *Abbee* v. *Ward*, 8 Mass. 79, the court held, in an action on the case against a sheriff for neglecting to serve an execution issued by a justice of the peace, in the plaintiff's favor, upon a recognizance taken under a statute of that State, by which the plaintiff lost his debt, that the sheriff might avail himself of a misrecital in the recognizance, both as to the sum,

and as to the time of entering into it, and had judgment accordingly. The court say, "It may be laid down as universally true, that whenever the process, by virtue of which a party is arrested, is void, no action can be supported for an escape."

In the case of *Loder* v. *Phelps*, 13 Wendell, 48, it was held that a justice of the peace was not authorized to issue a warrant against an inhabitant having a family, or against a freeholder, unless the applicant for the warrant states the facts and circumstances showing the grounds of his application; the mere allegation that he believes there will be danger of losing his debt unless a warrant issue, was not deemed sufficient, and the officer arresting the defendant upon such warrant, was held liable, the warrant being adjudged void.

The rule that a ministerial officer is protected in the execution of process issued by a court or officer having jurisdiction of the subject matter and of the process, if it be regular on its face, and does not disclose a want of jurisdiction, is a rule of protection merely, and beyond that confers no right; it is held to be personal to the officer himself, and affords no shelter to the wrong-doer, under color of whose process, if it be void, the officer is called upon to act.

Such an officer may stop in the execution of process regular on its face, whenever he becomes satisfied there is a want of jurisdiction in the court or officer issuing it; and if sued for neglect of duty, may show in his defense such want of jurisdiction. *Earl* v. *Camp et al.*, 16 Wend. 562. He can, if he chooses, take the responsibility of determining the question of jurisdiction, or any other question to which the process may give rise.

To the same effect is the case of *Horton* v. *Hendershot*, 1 Hill, (N. Y.) 119. The void process is a shield, not a sword—he can defend under it, but he cannot build up a title upon it.

The whole question is, is the process *void* or *voidable?* If the former, then no rights can be claimed under it except as here stated, and it is not amendable. If voidable, it is good for all purposes until set aside, and may be amended.

We regard this *ca. sa.* issued upon the affidavit set forth in the plea as void, and though protecting the sheriff in making the arrest, it cannot justify him in detaining the defendant, or make him liable in an action for an escape. He can pause in his career, and determine for himself the jurisdiction of the officer or court issuing it, at any stage of his proceedings, he taking the responsibility.

The judgment of the court below is affirmed.

*Judgment affirmed.*