Benjamin B. Morris, Appellant, v. Emanuel M. Schwartz, Appellee.

Gen. No. 43,025.

Heard in the second division of this court for the first district at the April term, 1944.

Opinion filed February 13, 1945. Rehearing opinion filed May 29, 1945. Released for publication June 14, 1945.

BENJAMIN B. MORRIS, *pro se;* DAVID I. SPARK, of Chicago, of counsel.

EMANUEL M. SCHWARTZ, *pro se;* HARRY G. FINS, of Chicago, of counsel.

## ON REHEARING.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

On January 30, 1942 plaintiff, Benjamin B. Morris, obtained a judgment for $1,150 in a contract action against the defendant, Emanuel M. Schwartz. On November 18, 1943, plaintiff made an application supported by his affidavit to one of the judges of the municipal court of Chicago for an order on the clerk of said court to issue an execution against the body of defendant based upon the aforementioned judgment

procured by Morris against Schwartz. Defendant, having received written notice that plaintiff proposed to file the application for a body execution against him on November 18, 1943, appeared on that day and filed written objections supported by his affidavit to said application. Thereafter, on November 22, 1943, plaintiff presented a motion in writing to strike from the files the affidavit of defendant appended to his objections and on the same day defendant filed written objections to plaintiff's motion to strike. The court ordered a hearing on the application for the body execution and the objections thereto and held that it was incumbent upon plaintiff to establish by evidence the truth of the facts alleged in his affidavit for such execution. Plaintiff refused to offer any evidence on the ground that he was not required to do so under the law. The court thereupon entered orders overruling plaintiff's motion to strike from the files the affidavit appended to defendant's objections and denying plaintiff's motion for a body execution. Plaintiff appeals from both orders. In our original opinion filed February 13, 1945 we reversed the orders appealed from and remanded the cause with directions "to sustain plaintiff's motion to strike defendant's affidavit appended to his objections and to enter an order for the issuance of a body execution against defendant." Defendant's petition for rehearing was allowed February 27, 1945.

Plaintiff's theory is that "his affidavit was sufficient to authorize the issuance of a body execution; that, upon his filing of said affidavit, the trial judge should have ordered the body execution to issue, and therefore erred when he ruled the plaintiff to introduce evidence to sustain the allegations in his affidavit; and that the procedure provided for in the statute for securing the issuance of a body execution does not violate the constitutional provision prohibiting imprisonment for debt."

Section 12 of article 2 of the Constitution of Illinois of 1870 provides as follows:

"No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud."

The Illinois Constitutions of 1818 and 1848 also contained this identical provision. Pursuant to said constitutional provision the following statutory procedure was adopted (sec. 1, ch. LII, Ill. Rev. Stat. 1845) for the procurement of a body execution against a judgment debtor:

"Whenever any debtor shall refuse to surrender his or her estate, lands, tenements, goods or chattels, for the satisfaction of any execution which may be issued against the property of any such debtor, it shall and may be lawful for the plaintiff in such execution, or his or her attorney or agent, to make affidavit of such fact before any justice of the peace of the county; and upon filing such affidavit with the clerk of the court from which the execution issued, or with the justice of the peace who issued such execution, it shall be lawful for such clerk or justice of the peace, as the case may be, to issue a *ca. sa.* against the body of such defendant in execution."

The constitutionality of this statute was upheld in *Fergus v. Hoard,* 15 Ill. 357, where the court, after referring to the constitutional provision and setting forth in detail the procedure provided for in said statute, stated at p. 361:

"It can hardly be insisted that in these provisions the legislature violated the immunity from arrest secured to the debtor by the constitution. It provides for his arrest in the precise case, the exact contingency, permitted by the constitution. It merely prescribes the mode of proceeding in such case, and that was necessarily left to the discretion of the legisla-

ture.  No other power existed in the state capable of determining in what way the facts should be determined, upon the existence of which the constitution permitted the arrest and imprisonment.

"The affidavit upon which the *ca. sa.* was issued, after stating the recovery of the judgment, proceeds, 'and this deponent further says that the said defendant, Henry K. Davis, has refused to surrender his estate, lands and tenements, goods and chattels, for the satisfaction of an execution issued out of said court upon said judgment, and still doth neglect and refuse to make said surrender.' This affidavit is certainly in literal conformity to the statute.  It makes the precise statements which the statute says shall be made in the affidavit."

In discussing the constitutional prohibition against imprisonment for debt in *Tuttle v. Wilson*, 24 Ill. 553, the Supreme Court, speaking through Mr. Justice BREESE, said at pp. 554 and 555:

"The right to personal liberty is one of the most valuable and most cherished rights appertaining to man in society, and one of which he cannot be deprived, except by the judgment of his peers, or by the law of the land.  In the barbaric age of the law in this country, the unfortunate debtor could be deprived of this inestimable right, if he failed to pay an honest debt.  His creditor could keep him in *arcta custodia* for the misfortune of being poor.  This was so in all the States of this Union, whose organic laws had been established prior to the year eighteen hundred and eighteen, except Tennessee.  In that year the constitution of this State was adopted, which contained, as one of its fundamental principles, alike beneficent and just, this provision: 'No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud.'  Art. 8, Sec. 15, (Scates' Comp. 54)."

In *Fergus v. Hoard, supra,* the affidavit for body execution merely alleged in the language of the aforesaid statute that the judgment debtor refused to surrender his estate, lands and tenements, goods and chattels, for the satisfaction of the execution issued pursuant to the judgment in that case and it was held to be sufficient. The ruling in the *Fergus* case as to the sufficiency of the affidavit filed therein was modified by the Supreme Court in the *Tuttle* case, where it was held that the affidavit for a body execution should aver not only that the defendant refused to surrender his estate, lands and tenements, goods and chattels, not exempt from execution, but that he has such estate, lands and tenements, goods and chattels.

It will be noted that the statute then in effect provided that ''upon filing such affidavit with the clerk of the court from which the execution issued . . . it shall be lawful for such clerk . . . to issue a *ca. sa.* against the body of such defendant in execution.'' It was undoubtedly because honest judgment debtors were too frequently subjected to unwarranted and unjust arrest and imprisonment under this mode of procedure and because it was too susceptible to abuse that the legislature was actuated to amend the statute by requiring among other things, an order of court for the issuance of a body execution, so that the liberty of judgment debtors would be afforded some measure of protection prior to their arrest and imprisonment. To that end section 62 of the Act relating to Judgments, Decrees and Executions (par. 65, ch. 77, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 107.215]) was enacted, prescribing a different mode of procedure for procuring a body execution. Said section is as follows:

''Sec. 62. If, upon the return of an execution unsatisfied, in whole or in part, the judgment creditor, or his agent or attorney, shall make an affidavit stating that demand has been made upon the debtor for the surrender of his estate, goods, chattels, land and tene-

ments, for the satisfaction of such execution, and that he verily believes such debtor has estate, goods, chattels, lands or tenements, not exempt from execution, which he unjustly refuses to surrender, or that since the debt was contracted, or the cause of action accrued, the debtor has fraudulently conveyed, concealed, or otherwise disposed of some part of his estate, with a design to secure the same to his own use, or defraud his creditors; and also setting forth upon his knowledge, information and belief, in either case, the facts tending to show that such belief is well founded, and shall procure the order of the judge of the court from which the execution issued, or of any judge or master in chancery in the same county, certifying that probable cause is shown in such affidavit to authorize the issuing of an execution against the body of the debtor, and ordering that such writ be issued; upon the filing of such affidavit and order with the clerk, he shall issue an execution against the body of such judgment debtor.''

For convenience this statute will sometimes hereinafter be referred to as section 62.

It was held in *Huntington v. Metzger,* 158 Ill. 272, that the foregoing section 62 did not violate the immunity from arrest secured to the debtor by the constitution. There the court said at p. 281:

''It would seem, however, from the recitals in the bill of exceptions, that appellee was charged by the affidavit, not only with a refusal to surrender his estate, etc., but also with fraudulently disposing of his estate with a design to secure the same to his own use, or defraud his creditors. Both of these grounds for arrest are within the contemplation of the constitution, which provides, that 'no person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud.' (Const. 1870, art. 2, sec. 12).''

Plaintiff's affidavit for body execution sets forth the entry of the judgment in his favor against Schwartz and the issuance of an alias execution based on said judgment, which together with a capias demand, was placed in the hands of the bailiff for service. A copy of the capias demand was included in the affidavit and it concludes as follows: "You are further advised that if you fail to comply with this demand you are liable to arrest on a body execution and imprisonment thereunder in the County Jail."

The affidavit then proceeded to allege:

"That the bailiff made a demand upon the judgment debtor for the surrender of his estate, goods, chattels, lands and tenements, for the satisfaction of such execution by handing him a copy of said execution, together with said certain capias demand and a copy of a certain debtor's schedule, and informing him of the contents thereof, all in accordance with the statute in such case made and provided and the rules of this court; that thereafter the judgment debtor herein filed a schedule of all his property, both real and personal, claiming his exemptions, which debtor's schedule was filed on or about the 12th day of June, 1942 and is in words and figures as follows: (Here appears a copy of the debtor's schedule, in which he states that he is the head of a family consisting of himself, wife and two children, that he has no real estate, no cash on hand and no debts due and owing to him and lists certain household furniture, an office desk, wearing apparel and a 1933 Pierce-Arrow automobile, all subject to chattel mortgage with the exception of the wearing apparel, kitchen utensils and bedding.)

"That the judgment debtor herein has estate, goods, chattels, lands or tenements not exempt from execution which he unjustly refuses to surrender.

"That he verily believes that the said Emanuel M. Schwartz, the judgment debtor herein, has, since the debt was contracted, or the cause of action accrued, fraudulently concealed or otherwise disposed of a

large part of his estate with a design to secure the same to his own use and to defraud his creditors.

"That some time prior to the issuance of the execution herein and the demand of the bailiff thereunder, but after the debt was contracted and the cause of action accrued, the judgment debtor herein executed a certain chattel mortgage together with Beatrice G. Schwartz, his wife, as mortgagor, granting, selling, conveying and confirming unto one Sol E. Fuchs, as mortgagee, certain goods and chattels, including household effects and a certain Pierce-Arrow automobile; that said chattel mortgage purports to have been executed for a consideration of $750.00 alleged to have been paid by said Sol E. Fuchs, and purports to have been given to secure the repayment of said sum of $750.00 alleged to be evidenced by a note of even date with said chattel mortgage for the sum of $750.00 due and payable on or before twenty-four months after date with interest at the rate of 5 per cent per annum, payable on maturity; that said chattel mortgage purports to be dated the 15th day of September, 1941 and was filed for record with the Recorder of Deeds for the County of Cook, at 4:13 P. M. on the 16th day of September, 1941 . . . .

"That he verily believes that said Chattel Mortgage was executed by the judgment debtor herein without consideration and is fraudulent; that neither the purported consideration of $750.00 alleged in said chattel mortgage to have been paid by the said Sol E. Fuchs to the mortgagees [mortgagors] therein, including the judgment debtor herein, nor any part thereof was actually paid by said Sol E. Fuchs to said mortgagees [mortgagors]; nor did any other consideration flow from said Sol E. Fuchs to said mortgagees [mortgagors]; that the note in the sum of $750.00, the payment of which is purported to be secured by said chattel mortgage was never executed by the mortgagees [mortgagors] therein, or if executed was done so with-

out consideration; that the said chattel mortgage and said note were executed by said mortgagees [mortgagors], if at all, for the purpose of fraudulently concealing and disposing of a part of the estate of the judgment debtor herein with a design to secure the same to his own use and to defraud his creditors.''

Plaintiff contends that the provisions of section 62, heretofore set forth, ''do not contemplate either a hearing as to the truth of the allegations contained in the affidavit or the giving of notice to the judgment debtor of the filing thereof, nor do they confer upon the court discretion to grant or refuse the application.''

Defendant's position seems to be that he was entitled to notice of plaintiff's application for the body execution and to a hearing on his objections to plaintiff's affidavit filed in support of such application as to the truth of the facts set forth in said affidavit and that it was incumbent upon plaintiff to prove the charges of fraud made by him in his affidavit before the court would be warranted in ordering the issuance of a body execution against him.

In so far as we have been able to ascertain the questions raised by defendant as to a judgment debtor's right to a hearing as to the truth of the allegations contained in an affidavit of a judgment creditor for a body execution and as to a judgment debtor's right to notice of the filing of such an affidavit have not heretofore been presented to or considered by any court of review in this State, notwithstanding that the aforesaid section 62, authorizing the issuance of body executions and prescribing the mode of procedure for procuring same, was enacted in 1872.

We agree with plaintiff's contention that there is no provision in section 62 that requires or contemplates notice to a judgment debtor of an application for a body execution against him and the fact that defendant was given notice of plaintiff's ap-

plication in the instant case may be disregarded. As was said in *In re Keene,* 15 R. I. 294, 3 Atl. 418, in construing a somewhat similar statute, to give notice "would in many cases defeat the purpose of the statute." We also agree with plaintiff's contention that there is no provision in section 62 that requires or contemplates a hearing on his affidavit filed in support of his motion for a body execution against defendant. We cannot agree with defendant's contention that it was incumbent upon plaintiff in this proceeding to prove that Schwartz was guilty of fraud as charged in plaintiff's affidavit. Not only is there no provision in the statute that requires or contemplates that plaintiff make such proof but the very language of the statute, that the court certify from the facts averred "that probable cause is shown in *such* affidavit," precludes the requirement of proof of the facts alleged therein.

■ ■ This brings us to the consideration of the question as to the sufficiency of plaintiff's affidavit. He alleges therein in the language of the statute (1) that the "debtor has estate, goods, chattels, lands or tenements, not exempt from execution, which he unjustly refuses to surrender" and (2) that "since the debt was contracted, or the cause of action accrued, the debtor has fraudulently conveyed, concealed, or otherwise disposed of some part of his estate, with a design to secure the same to his own use, or defraud his creditors." Plaintiff argues that these two averments alone were sufficient to authorize the issuance of a body execution against defendant. They undoubtedly would have been under the statute in effect prior to the enactment of section 62 but it is readily apparent that they are insufficient to comply with all the requirements of said section. It will be recalled that under the former statutory procedure it was only necessary to present the affidavit to the clerk of the court, who would automatically issue a body execu-

tion. But this procedure was essentially changed by section 62 for the reasons heretofore indicated. The vitally important change of procedure effected by said section is found in the additional requirement that the judgment creditor's affidavit must set forth "upon his knowledge, information and belief, in either case, the facts tending to show that such belief is well-founded, and shall procure the order of the judge of the court from which the execution issued, or of any judge or master in chancery in the same county, certifying that probable cause is shown in such affidavit to authorize the issuing of an execution against the body of the debtor, and ordering that such writ be issued . . . ." It will be noted that under this requirement the facts alleged must be "upon his knowledge, information and belief, in either case." This last quoted language can only mean that the facts must be alleged upon *knowledge* or *information* and *belief*. It will also be noted that facts must be alleged which tend to show that the judgment creditor's belief is *well-founded* that the judgment debtor is guilty of unjustly refusing to surrender his estate or of fraudulently conveying, concealing, or otherwise disposing of same as charged in the affidavit for body execution and that the facts averred must be sufficient to warrant the court in certifying "that *probable cause* is shown in such affidavit to authorize the issuing of an execution against the body of the debtor" and in ordering the clerk to issue such execution.

The charge in plaintiff's affidavit that defendant unjustly refused to surrender his estate for the benefit of his creditors may be disregarded, because there is not a single fact alleged therein either upon knowledge or information and belief that would tend to support such charge.

██ ██ It was only in support of the charge in his affidavit that defendant had "fraudulently conveyed, concealed or otherwise disposed of some part of his

estate with a design to secure the same to his own use or to defraud his creditors'' that plaintiff made any pretense of alleging the facts required by the statute. The only facts alleged by plaintiff in his affidavit upon which he can possibly rely as tending to show that he had a *well-founded* belief that defendant had fraudulently concealed or otherwise disposed of his estate are those contained in paragraph 7 thereof.

It is alleged in said paragraph that plaintiff ''verily believes'' that the chattel mortgage was executed by the defendant without consideration; that defendant did not receive from Fuchs the $750 consideration for which the chattel mortgage was purportedly given or any part of said sum and that he received no other consideration from Fuchs; that defendant and his wife never executed the note for $750, the payment of which was purported to be secured by the chattel mortgage or ''if executed, was done so without consideration''; and that ''said chattel mortgage and said note were executed'' by defendant and his wife, ''if at all,'' for the purpose of fraudulently concealing and otherwise disposing of a part of their estate.

Such facts as are set forth in this paragraph were alleged purely upon plaintiff's belief and not upon his' knowledge or information and belief as the statute requires. Since the statute provides that the alleged facts must tend to show a ''well-founded belief'' that defendant was guilty of fraud as charged in the affidavit, it certainly could not have been intended that such ''well-founded belief'' could have as its basis facts averred solely on belief. The express provision of the statute that facts must be alleged upon knowledge or information and belief which tend to show that ''such belief is well-founded'' can only mean that the belief must be ''well-founded'' on facts alleged either upon knowledge or upon information. It is entirely immaterial that plaintiff in his affidavit used the term ''verily believes'' in alleging the facts

upon which he relied as tending to show that his belief was "well-founded" that defendant was guilty of the fraud charged and that there was probable cause for the issuance of a body execution. The term "verily believes" used in this connection has no more significance than if the affidavit merely stated that he "believed" the facts alleged. It is true that the statute permits the use of the term "verily believes" in alleging either or both of the grounds upon which the issuance of a body execution might be ordered but it precludes the averment of facts necessary to show probable cause merely upon belief and specifically provides that such facts must be alleged upon knowledge or information and belief and that the facts so alleged upon knowledge or information must be sufficient to induce a "well-grounded" belief that the judgment debtor against whom the body execution is sought has unjustly refused to surrender his estate or has fraudulently concealed or otherwise disposed of same. It is idle to urge that a "well-grounded" belief can be predicated on facts alleged solely on belief. Since there is not a single fact alleged in paragraph 7 of plaintiff's affidavit upon either knowledge or information, it must be held that said affidavit was insufficient to authorize the issuance of a body execution against defendant.

Plaintiff's affidavit is also deficient in another respect. There can be no question but that the statute contemplated that, in setting forth facts to show probable cause, such facts must be alleged positively, whether upon knowledge or information and belief, and not by way of speculation. It is readily apparent that the allegations of paragraph 7 of plaintiff's affidavit, heretofore set forth, with the exception of the averment that defendant received no consideration for the execution of the chattel mortgage, are indefinite and speculative or in the alternative. Such allegations were insufficient to warrant the court in certify-

ing that probable cause was shown in the affidavit for the issuance of a body execution.

It is quite obvious that section 62 vests no discretion in the trial court as to whether it will or will not order the issuance of a body execution. It is just as obvious that the statute imposes upon the trial court the duty of judicially determining whether facts are alleged in the affidavit either upon knowledge or information and belief which show that probable cause exists for the issuance of a body execution. In other words, the statute imposes upon the trial court the duty of determining as a matter of law the sufficiency of the affidavit (*Huntington v. Metzger, supra,* p. 298) and therefore it must determine that it strictly conforms to all of the requirements of section 62 before it can order a body execution to issue.

It is suggested that a judgment debtor who is arrested on a body execution has a remedy in the county court under the Insolvent Debtors' Act and that under section 5 thereof (par. 5, ch. 72, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 109.382]) he may traverse in said court charges of fraud or refusal to surrender his estate contained in a judgment creditor's affidavit for body execution and have the question, whether he is guilty of fraud or of unjustly refusing to surrender his estate for the benefit of his creditors, tried by a jury. The fact that a judgment debtor has this remedy after his arrest does not relieve the court to which an application for body execution is presented from its obligation to reject same, if the affidavit filed in support thereof does not conform to all of the statutory requirements.

Defendant contends that a judgment entered in a garnishment proceeding which plaintiff instituted against the same Sol E. Fuchs mentioned in plaintiff's affidavit for body execution is *res judicata* as to the Morris application for body execution against Schwartz. It is difficult to believe that defendant is serious in making this contention, since, as already

shown, there is no provision in the statute that even permitted him to participate in this proceeding in the court below.

Defendant also contends that a refusal to permit him to defend himself against the charges of fraud made in plaintiff's affidavit "would be directly contrary to section 12 of article 2 of the Illinois Constitution of 1870 and is directly contrary to 'due process of law' as guaranteed to the defendant by section 2 of article 2 of the Illinois Constitution of 1870 and the 14th Amendment to the Constitution of the United States." This contention does not merit serious consideration. As has been seen, the constitutionality of section 62 has been upheld by our Supreme Court (*Huntington v. Metzger,* 158 Ill. 272) and plaintiff having duly recovered his judgment, the constitutional requirement of "due process of law" was met. (*In re Keene,* 15 R. I. 294, 3 Atl. 418.) A motion was presented by defendant to transfer this cause to the Supreme Court on the ground that there were constitutional questions involved herein. We denied this motion, because, in our opinion, there are no debatable constitutional questions presented.

If plaintiff's affidavit had conformed in all respects to the requirements of section 62, it was unquestionably the duty of the trial court to order the issuance of a body execution against defendant. If plaintiff's affidavit did not conform in all respects to the requirements of section 62, it was just as much the duty of the trial court to refuse to order the issuance of a body execution against defendant.

If, as suggested, the statutory provisions in question authorizing the issuance of body executions and prescribing the mode of procedure for procuring same are unduly drastic, their modification is a matter for the legislature and not for the courts.

Inasmuch as we have determined after a careful examination of the allegations of plaintiff's affidavit that it was insufficient to authorize the trial court to order

the issuance of a body execution against defendant and that it did not conform to all of the statutory requirements, we are impelled to hold that the trial court did not err in denying plaintiff's motion for such body execution.

Since a correct result was attained by the order of the trial court denying plaintiff's motion for a body execution against defendant, that order must be affirmed, even though the method of procedure followed by the trial judge in considering and disposing of plaintiff's application and affidavit was unquestionably improper and at variance with the procedure prescribed by section 62.

For the reasons stated herein the order of the municipal court of Chicago denying plaintiff's motion for a body execution against defendant is affirmed and the order of said court overruling plaintiff's motion to strike from the files the affidavit appended to defendant's objections to plaintiff's application for a body execution is reversed.

*Order denying plaintiff's motion for a body execution affirmed. Order denying plaintiff's motion to strike defendant's affidavit filed in support of his objections reversed.*

MR. JUSTICE FRIEND specially concurring:

I fully agree with the conclusion that plaintiff's affidavit was insufficient in that it failed to conform to the requirements of section 62 of the statute, and that a body execution against defendant could not have been properly ordered to issue on such affidavit; but I do not think the procedure under section 62 was intended to be so drastic and peremptory, even when the affidavit is sufficient, as to preclude a judgment debtor, under any circumstances, from objecting to the issuance of a *capias*. Such procedure would subject the unfortunate debtor who has failed to pay an honest debt, to imprisonment, without permitting him

to apprise the court of any conceivable reason, however valid, why the application should not be granted, and enable a spiteful creditor to lodge him in jail on false charges, without any recourse for perjury. I know of no instance in our civil law where a person may be deprived of his liberty without a hearing.

In Nichols Illinois Civil Practice, vol. 5, secs. 5349–5356, pp. 251–257, the author traces the history of legislative enactments empowering imprisonment for debt in tort actions with citations of recent Supreme Court cases interpreting the procedure and effect of the amendment in 1935 of section 5 of the Judgments Act (Ill. Rev. Stat. 1943, ch. 77 [Jones Ill. Stats. Ann. 107.155]). The right to imprison a debtor by *capias* prevailed at common law regardless of whether the debt was based on a tort or arose out of a contract. (*White v. Youngblood,* 367 Ill. 632.) Therefore the constitutional provision under consideration is not a grant of power, but a limitation on the common-law right and has been uniformly construed by the courts as applying solely to debts arising out of contract between the parties, either express or implied, and as having no relation to judgments recovered in tort actions. The legislature has the sole power to provide for punishment. (*In re Petition of Blacklidge,* 359 Ill. 482.) But the issuance of an execution against the body of a defendant, even in tort actions, is prohibited by the act as amended (sec. 5 of the Judgments Act) unless it shall appear from a special finding of the jury, or from a special finding by the court if the case is tried by the court without a jury, that malice is the gist of the action. Prior to that amendment the issuance of the writ was not dependent upon a finding or reference to malice in the judgment, but if the action was in tort and a judgment was rendered against the defendant who committed the tort, it became the duty of the clerk to issue a *capias* at the re-

quest of the plaintiff. The effect of the amendment was to abolish executions against the body in tort actions in which malice is not the gist of the action, and also to forbid the issuance of a body execution even in actions in which malice is the gist of the action unless there is a special finding of malice by the court or jury. (*Pappas v. Reabus,* 299 Ill. App. 499.) Prior to the 1935 amendment of section 5 of the Judgments Act a *capias* could be issued upon any tort judgment, and a defendant apprehended under such a *capias* could be released on application to the county court under the provisions of the Insolvent Debtors Act (Ill. Rev. Stat. 1943, ch. 72 [Jones Ill. Stats. Ann. 109.378 *et seq.*]), provided the latter court determined that malice was not the gist of the action; and when defendant made application for his release, an issue was raised in the county court as to whether malice was or was not the gist of the action. But since the amendment of 1935 it is no longer necessary or proper to go into the county court to determine that issue. If the clerk of a court issues a *capias* in a tort case and defendant desires to challenge the action of the court, he may apply to the court in which the judgment was rendered to have the writ quashed. Thus, if the defendant against whom a body execution has been issued, desires to question the sufficiency of the finding of malice in the judgment, he may do so by making a motion to quash the writ upon that ground. (*Ingalls v. Raklios,* 373 Ill. 404.) Malice has been defined as applying to that class of wrongs which are inflicted with an evil intent, design or purpose, implying that the guilty party was actuated by improper or dishonest motives, and it is therefore understandable that the legislature should have provided for imprisonment of tortfeasors in cases where malice exists. Nevertheless, even in that class of cases the legislature has safeguarded the liberty of an individual by providing that he shall not be imprisoned

until after a full hearing and unless it shall appear from a special finding of the court or jury that malice is the gist of the action, and until his motion challenging the *capias,* if he makes such a motion, has been overruled. In view of these circumstances it seems ironical, in a judgment arising out of contract, where no evil intent, design or purpose is implied, that the judgment debtor should be committed without any opportunity whatever to voice his objection, however valid it may be. In contempt proceedings where guilt may be punishable by either fine or imprisonment, the respondent is afforded an opportunity to file a denial of the charges made against him, and in some instances to purge himself by his verified answer.

It is suggested, however, that a debtor may later purge himself of a false accusation through proceedings in the county court under the Insolvent Debtors Act and thus effect his release. The remedy suggested does not constitute a safeguard against imprisonment because he can have recourse to the remedy only after he has been arrested and imprisoned, and his personal liberty is certainly just as valuable a right before his arrest as it is after he has been committed.

The trend of social justice has steadily advanced in this country for upward of a century. In *Tuttle v. Wilson,* 24 Ill. 553, the court traces the departure by legislative enactment from what Mr. Justice Breese characterized as "the barbaric age of the law in this country" before Illinois was admitted to the union, when debtors in all states, except Tennessee, could be deprived of "the inestimable right" of personal liberty for their failure to pay an honest debt and kept in custody "for the misfortune of being poor." As shown in the *Tuttle* case, the constitution adopted in 1818, like that of 1848, contained provisions identical with section 12 of article II of our present

organic law, but the first General Assembly failed to observe the then novel provision against imprisonment for debt. However, at the second session they passed an Act, approved in 1819, by which process by *capias* was recognized in substantially all actions. It provided that "if, upon a *capias,* the sheriff shall take the body of the defendant, he shall commit him to the common jail of the county, or take a bond to himself. . . ." All the rigor known to the common law marked the preliminary proceedings, and to incarcerate a debtor of that day no affidavit was required. But, as stated in the *Tuttle* case, "to our credit be it said, the law did not so remain but for a short time." At the first session of the second General Assembly an Act was passed in January 1821 providing for special bail in lieu of the appearance bail required in all cases under the Act of 1819, and further providing that in no case could bail be required unless the plaintiff should first make an affidavit before the clerk of the court that he verily believed he would be in danger of losing his demand or the benefit of whatever judgment he might obtain. The third session of the General Assembly passed an Act, approved in February 1823, which provided that no person should thereafter be imprisoned for debt except for the causes therein set forth; but when any execution issued, it should be the duty of the officer serving it to levy upon and sell the debtor's property or so much of it as might be necessary to satisfy the execution; and if it appeared by the return of the officer that the defendant had no property, his body could not be arrested by any process whatever unless the plaintiff, his agent or attorney, should swear before some justice of the peace or judge of the circuit court that he verily believed that the defendant intended, or was about to remove or abscond out of the county in which the judgment was obtained or in which the defendant resided, in which case it was lawful to issue a *ca. sa.*

against the body of the defendant, and commit him to jail, there to remain until he took the oath of insolvency, as prescribed by the Act of 1821, or gave sufficient security that he would not depart from the county for two years. It was further provided that if the plaintiff, his agent or attorney, should make affidavit before a justice of the peace, the truth thereof to be ascertained by a jury of not less than six householders nor more than twelve, that he verily believed that defendant had hid, concealed or transferred any equity, chose in action, or any species or description of property whatever for the purpose of defrauding the plaintiff, the body of the defendant could be arrested and committed to jail, there to remain until he should be released by taking and subscribing the oath of insolvency. Thus the law remained, with slight alterations, until the revision of the statute in 1845, which provided that when a debtor refused to surrender his estate, etc., the judgment creditor might obtain a body execution from the *clerk* of the court by presenting an affidavit setting forth facts constituting fraud. Finally, in 1872, the statute was amended so as to require a *court order* for the issuance of a body execution. This was a significant change, because it indicated an intention on the part of the legislature that a judicial determination should be had before the debtor could be committed, thus constituting an additional safeguard against unjust imprisonment.

During the years that have intervened since 1818, our courts have interpreted the various statutes passed in pursuance of the constitutional prohibition of imprisonment for debt with the most searching scrutiny, and have always been zealous to safeguard the personal liberty of the individual. Thus, in the early case of *Fergus v. Hoard* (1854), 15 Ill. 357, a divided court held that it was not necessary in the required affidavit to state that the defendant had property which he refused to surrender, that fact be-

ing implied in the statement that he refused to sur-
render his property, and that a personal demand on
defendant by the sheriff to surrender his estate, lands,
etc. in satisfaction of an execution was not necessary.
But in the *Tuttle* case, decided six years later, the Su-
preme Court said they had examined the ruling in the
*Fergus* case "critically," and were "disposed to think
it should be somewhat modified—that something more
should be required to make the affidavit sufficient,"
namely, an allegation that the defendant had estate,
lands and tenements, goods or chattels, liable to be
seized and sold on execution, "specifying them as
near as may be," and that he refused to surrender
them after a personal demand upon him to do so; and
because the affidavit in the *Tuttle* case merely alleged
that defendant had "property and estate," instead of
"estate, lands and tenements, goods and chattels,"
as prescribed by the statute, and no demand had been
made on defendant, the court held the affidavit "desti-
tute of those necessary averments" and insufficient
as a foundation for the *ca. sa.*

In the interim between the *Fergus* and *Tuttle* cases,
the Supreme Court in *Gorton v. Frizzell,* 20 Ill. 291,
reversed judgment against a sheriff for escape of a
party arrested under a *capias,* because the attached
affidavit contained no averment that defendant had
money which could be appropriated to the debt or
that defendant had any property or that such as he
may have had was not exempt from execution, "and
besides," said the court, "the affidavit is in the al-
ternative, and does not set forth the circumstances on
which the presumption of fraud can be raised."

These decisions clearly indicate that the courts in
this state have never relaxed the exact requirements
of the statute, and even in the earliest days safe-
guarded the constitutional immunity from imprison-
ment for civil debts. In recent decisions the trend
toward preserving the personal liberty of the indi-
vidual has been even more marked.

In *People v. LaMothe,* 331 Ill. 351, defendants were cited for contempt in refusing to comply with a decree ordering them to pay over to a receiver money paid in to the capital stock of a corporation, the organization of which was abandoned. The Supreme Court, in reversing an order of commitment, said that "In the enforcement of this constitutional provision [sec. 12 of art. II of the state constitution, which prohibits imprisonment for debt] every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. . . . No man can be legally imprisoned for a failure to pay over money he does not have and never had." In *Tudor v. Firebaugh,* 364 Ill. 283, the question arose whether respondent, as trustee, could be adjudged in contempt and imprisoned under the statute for his refusal to pay over money received and wrongfully withheld. The court said that the statute should not be construed to authorize imprisonment in the first instance merely because of failure to pay a money decree, as the statutory provision for imprisonment was for wilful defiance and not merely for failure to comply with the decree where the disobedience is not wilful, and again said that "In the enforcement of this constitutional provision every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it." In *Peiffer v. French,* 376 Ill. 376, the attitude of the Supreme Court of this state toward the law permitting the practice of incarcerating individuals because of their inability to pay judgments against them in civil cases has recently been expressed in no uncertain language as follows:

"Laws in derogation of the liberty of a citizen must be strictly construed, and to justify any imprisonment for tort, which is contrary to the general tendency of our times, statutory requirements must be meticulously observed." In *In re Estate of Rackliffe,* 366 Ill. 22, the probate court, on hearing of a petition for the appointment of a conservator, ordered a witness to turn over to the conservator certain bonds in her possession as belonging to the incompetent, the witness having claimed the bonds were given to her. The order was entered without any citation or proper hearing of the issue of ownership, the witness being in court only by subpoena. In reversing the order the Supreme Court said: "It is an elementary principle of jurisprudence in all civilized countries that before property or liberty may be taken from an individual he shall have an opportunity to be heard on charges brought against him. This is a rule so universal in its application to all common law, chancery or *statutory proceedings* that there is general agreement that no court has power otherwise to divest a person of property or punish him. *In fact the recognition of that basic principle of justice is so widespread that courts are now seldom called upon to restore rights of individuals so ruthlessly taken from them.* (*Leininger v. Reichle,* 317 Ill. 625; *Heppe v. Szczepanski,* 209 id. 88; *Botsford v. O'Conner,* 57 id. 72.)" (Italics mine.)

I can conceive of instances where cogent reasons would require a court to deny the application for a body execution. One of these reasons is present in this proceeding. Plaintiff's affidavit alleged "that the judgment debtor herein has estate, goods, chattels, lands or tenements not exempt from execution which he unjustly refuses to surrender and that he [plaintiff] verily believes that . . . the judgment debtor herein has, since the debt was contracted, or the cause of action accrued, fraudulently concealed or otherwise

disposed of a large part of his estate with a design to secure the same to his own use and to defraud his creditors.'' These allegations are of a general nature and do not in any sense ''as near as may be'' (*Tuttle v. Wilson, supra*) specify the estate, lands, etc. to be seized and sold on execution. The only attempt in plaintiff's affidavit to specify the property which defendant was charged with fraudulently concealing relates to a chattel mortgage given by the judgment debtor and his wife to Sol E. Fuchs several months before judgment was entered against defendant and almost two years before the application for a body attachment was made, which plaintiff ''verily believes . . . was executed by the judgment debtor herein without consideration'' and ''for the purpose of fraudulently concealing and disposing of a part of the estate of the judgment debtor herein with a design to secure the same to his own use and to defraud his creditors.'' When defendant was notified in writing of plaintiff's motion, he filed written objections to the application, denying that he had any assets, goods, etc. which were not exempt from execution, denying that the mortgage was fraudulently given, and averring affirmatively that ''plaintiff herein has attempted to set aside said mortgage by making the mortgagee a garnishee in the above entitled cause; that a hearing was had in said proceeding and the Municipal Court of Chicago found that the mortgage was valid and discharged the mortgagee as garnishee.'' It was defendant's contention that the finding and judgment in the garnishment proceeding constituted an adjudication that no fraud had been committed by him in conveying the mortgaged property to Fuchs, and that plaintiff's affidavit touching upon the identical chattels that he had sought to reach in the garnishment proceeding, was merely an attempt to relitigate the validity of the mortgage and the charges of fraud. The opinion holds squarely

that the defense of *res judicata* to plaintiff's application for a body execution could not be interposed or considered because "there is no provision in the statute that even permitted him to participate in this proceeding in the court below." If this narrow interpretation of the statute were to .be followed, any judgment debtor could be summarily arrested and imprisoned, and the enunciation of the courts that every doubt should be resolved in favor of the liberty of the citizen would become a mockery, for there would be no way by which he could apprise the court of any conceivable reason or defense which would enable it to determine whether a reasonable doubt existed.

There is no denial anywhere in plaintiff's briefs that the garnishment proceeding was determined adversely to him. The record shows, and he admits, that an order was entered in the garnishment proceeding finding the issues against plaintiff and discharging the garnishee. He says he is even willing to assume "for the sake of argument that the defense of *res adjudicata* can, in a proper case, be made to an application for a body execution;" but he argues that such defense would be unavailing here because "the garnishment proceedings in question and the motion of the plaintiff did not involve the same cause of action and the same parties"; that "the issue therein was whether or not the garnishee was indebted to, or had effects or estate of, the defendant in his possession, custody and charge"; that "the order discharging the garnishee thus decided merely that the garnishee was not so indebted to the defendant and did not so have effects or estate of the defendant in his possession, custody or charge"; and that "it [the court], did not, and could not, determine the validity of the chattel mortgage in question, which, the defendant claims, forms the issue in this case." We recently held in *Fidelity Coal Co. v. Diamond,* 322 Ill. App. 229, and in *Morris v. Beatty,* 323 Ill. App. 390, that garnishment is practically synonymous with a credi-

tors' bill and that in a garnishment proceeding the court exercises equitable jurisdiction and may make full inquiry as to the rights of the parties. Of course, the chattel mortgage of which plaintiff speaks in the garnishment proceeding is the identical one which he describes in his affidavit for a body attachment. The record does not disclose this fact, but it would be naive, in view of plaintiff's admission and the space he devotes in his briefs to the argument touching upon the question of *res judicata* as a defense, to entertain any doubt about it. Since plaintiff undoubtedly garnisheed Fuchs on the theory that he could prove the chattel mortgage was fraudulently made and without consideration, the municipal court in the garnishment proceeding was called upon to determine its validity. If it was a valid mortgage, then Fuchs had no effects or estate belonging to defendant; if, on the other hand, it was fraudulently made, the mortgage was void and the chattels conveyed to Fuchs still belonged to defendant and were subject to garnishment. From a reading of plaintiff's briefs no other conclusion is possible; and having once submitted the issue to the municipal court, resulting in a judgment and finding against him, he should not be permitted to relitigate the question or press the same charges of fraud as a basis for defendant's arrest and imprisonment; and if the court knew or was apprised of these facts it was certainly bound to judicially determine that plaintiff's affidavit did not show probable cause.

The authorities are generally to the effect that the principal action and the garnishment proceeding, when it is in aid of execution, are regarded as constituting a single suit (38 C. J. S. Garnishment, sec. 2a (4), p. 206, and cases there cited). In *Senelick for use of Home Bank & Trust Co., v. Mann,* 239 Ill. App. 589, the court adopted the definition set forth in Encyclopedia of Law and Procedure, vol. 20, p. 979, as follows: ''Garnishment is in no sense a new suit, but is a special auxiliary remedy for more effectually reaching

defendant's credits, and is always ancillary to the main action under which it is brought." In *Freeport Motor Casualty Co. v. Madden,* 354 Ill. 486, the court, speaking of garnishment, said that "it is not an independent proceeding but is ancillary or auxiliary. It depends upon another proceeding in law or equity. It is entirely remedial, and is resorted to either in aid of a pending action or in aid of an execution issued on a judgment already recovered." In *Dennison v. Taylor,* 142 Ill. 45, the court held that a proceeding against a garnishee is not a collateral proceeding to the original action, but is ancillary to the controversy between plaintiff and defendant and a part of the same suit. In *Willson v. Pennoyer,* 93 Minn. 348, it was likewise held that a garnishment proceeding "is not a separate or independent action, but, on the contrary, is incidental or ancillary to the main action against defendant." See also *Bowen v. Port Huron Engine & Thresher Co.,* 109 Iowa 255. And of course the application for a body execution would necessarily also be regarded as part of the original suit or proceeding. If we assume that to be a correct statement of the law, the court would take judicial cognizance of its own record, and when defendant interposed the objection that the validity of the mortgage had previously been adjudicated in the garnishment proceeding, the court would naturally entertain grave doubts as to the truth of plaintiff's affidavit in determining whether or not probable cause was shown.

Plaintiff argues that notice to the judgment debtor of the application for a body execution and an opportunity to object thereto, would defeat the purpose of the statute by allowing the debtor to escape or leave the jurisdiction before he could be committed. The law is clear, however, that among the procedural steps necessarily required before a *capias* will issue, a demand must be made and the debtor must be informed

that he will be liable to arrest if he fails to comply. *Maher v. Huette,* 10 Ill. App.. 56. Thus, if he desired to leave the jurisdiction, he could do so after demand had been made and before the application could be presented to the court.

These parties were not creditor and debtor in the ordinary sense. They are both lawyers and had been associated in practice for 24 years. When they separated defendant gave plaintiff an I.O.U. for rent, upon which judgment was obtained. When an execution issued defendant filed a sworn schedule, stating that he was the head of a family consisting of himself, wife and two children, and listed certain household furniture, an office desk and a 1933 Pierce-Arrow automobile, all subject to the same chattel mortgage here under discussion. Plaintiff then sought to reach the mortgaged chattels through garnishment, upon the theory that the mortgage was fraudulent and given without consideration, and having failed in that ancillary proceeding, he still had an adequate remedy, under chapter 37, par. 424, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 108.092], to proceed through a citation to examine defendant and "other witnesses as upon the trial of any action" to determine the validity of the mortgage and reach any assets that defendant might have had which were not exempt from execution; but he was evidently more intent upon incarcerating his former associate than on collecting his judgment and therefore sought the body execution on the basis of an affidavit which again challenged the validity of the mortgage in another form. This ruthless procedure shocks the conscience, and I think it would have been a denial of justice for the court to grant the application for defendant's arrest and imprisonment, without considering the validity of his defense of *res judicata* in determining as a matter of law whether plaintiff's affidavit showed probable cause.

Mr. Justice Scanlan specially concurring: The constitutionality of the Act in question has been upheld by the Supreme Court. The Legislature, alone, has the power to determine whether a proposed Act is wise or unwise. We have no right to condemn or criticise this Act because we may think that the Legislature should have provided therein that a defendant be "heard in opposition to the application" and to have "a hearing on his objections" to the "affidavit filed in support of the application as to the truth of the facts set forth in said affidavit"; nor have we the right, in interpreting this Act, to read into it provisions that, in our judgment, would tend to make the proceedings under the Act more equitable as between the parties. It would be a sufficient answer to Mr. Justice Friend's argument that in passing upon the affidavit for a body execution the trial court had the right to consider the garnishment proceeding and the effect of the same, to say that there is nothing in the record to show that the alleged fraudulent chattel mortgage set up in said affidavit was an issue in the garnishment proceeding. Moreover, Mr. Presiding Justice Sullivan has held that the statute imposed upon the trial court the duty of determining, *as a matter of law,* the sufficiency of the affidavit, and if this holding is sound—and I entertain no reasonable doubt that it is—the trial court, in passing upon the sufficiency of the affidavit, had no right to consider the garnishment proceeding nor to permit the defendant to contest "the truth of the facts set forth in said affidavit." If we were to hold that the defendant had the right to file objections to the application and to have "a hearing on his objections" "*as to the truth of the facts set forth in said affidavit,*" in my judgment, we would be reading into the Act provisions that are not contained therein and that would materially change the plain purpose and intent of the

Act. I am satisfied that Mr. Presiding Justice Sulli-
van's interpretation of the language of the Act is
sound, and I concur in his opinion.