Phyllis J. Alaimo, as Administratrix of Estate of Robert C. Alaimo, Deceased, and Judge & Dolph, Ltd., for Use of Hartford Accident and Indemnity Co., Inc., Appellants, v. Henry F. Du Pont, Appellee.

Gen. No. 46,374.

First District, Third Division.

December 29, 1954.

Rehearing denied January 25, 1955.

Released for publication January 27, 1955.

Augustine J. Bowe, William J. Bowe, and John D. Casey, all of Chicago, for appellants.

Eckert, Peterson & Lowry, of Chicago, for appellee; A. R. Peterson, Harold W. Huff, and Herbert C. Loth, Jr., of counsel.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action under the Wrongful Death Act, Ill. Rev. Stats. 1953, ch. 70, §§ 1 and 2 [Jones Ill. Stats. Ann. 38.01, 38.02], joined with an action for the use of an insurer to recover from defendant the amount of an award made pursuant to the Workmen's Compensation Act, Ill. Rev. Stats. 1953, ch. 48, § 138.5, subd. (b) [Jones Ill. Stats. Ann. 143.68, subd. (b)]. Defendant was charged with negligence which caused decedent's death. The court directed a verdict for defendant at the close of plaintiffs' case and judgment was entered accordingly. Plaintiffs have appealed.

The decedent, Robert Alaimo, worked in a warehouse for plaintiff, Judge & Dolph, Ltd. who leased and occupied the entire building from the defendant, a nonresident owner who has never been inside the building. Alaimo "stored and moved about" merchandise in the three-story structure and in the course of his employment had occasion to use a freight elevator which was installed in the building when it was built in 1914 or 1915.

The elevator was operated by a hand rope cable. At each floor there were iron elevator doors about 10 feet high which were opened by the upper half rising and the lower half moving down. The doors on the second and third floors worked somewhat in unison so that when the upper half of the door on the second floor was raised the lower half of the door on the third floor would rise to close. Thus when the lower half of the third floor door was closed, the upper half of the second floor door was open. When the elevator was at the second floor the third floor doors would not open completely but would open "a foot or a foot and a half."

The elevator was equipped with a threshold plate which could be let into place from the elevator to form a deck over the several inches between the elevator and

87

any floor at which it was stopped. When this plate was down the elevator would not move. When not in use the plate swung up and inside the elevator against a flange in a somewhat upright position.

The elevator was not equipped with an electro-mechanical interlock which is designed to prevent the elevator doors from being opened when the elevator is not at the landing and the elevator from moving unless the doors where it stops are closed. The device had been in standard use in this country for thirty years. There was not on the elevator a "magnetic rope lock" which, with the opening of the elevator doors, operates electrically to seize the rope cable so it cannot be pulled up or down. This had been standard equipment for thirty-five years. The elevator had never been modernized or kept in order since its installation and defendant's agent had not inspected it for fifteen years.

There was no signal device which told the location of the elevator. The only way one could tell where the elevator was, was to put "your head in." The "mechanical catches" to keep the door shut "weren't balanced right" and did not function. There was a rope lock device on the hand rope which controlled the movement of the elevator. The lock did not operate, however, because there "were no lock balls on the control cable." When functioning this device maintained the stop at each landing. It is placed in function by throwing a small lever. The lever was on the rope lock the day of the accident but since the lock balls were missing the device was ineffective.

On December 6, 1951, Alaimo was working on the second floor of the warehouse and with another man was moving a truckload of boxes toward the elevator. At the same time two other men were working on the third floor. One of the men on the third floor looked down the shaft, saw the elevator, called for it and then opened the elevator doors a little and pulled on the hand cable to bring the elevator up. When

he had "just" done this, the third floor doors started to close and "almost caught him." A moment later it was discovered that Alaimo had been caught in between the elevator floor and the wall of the shaft. His feet were dangling about 6 feet above the second floor. The second floor door was open. He sustained injuries that resulted in his death. There were no witnesses to the accident and no evidence as to what the decedent was doing immediately prior to the accident. The view of the man working with him was obstructed by the boxes on the truck.

Plaintiffs contend that the defendant negligently failed to repair as required under clause 16 of the lease and is therefore liable for the damages resulting from this breach of the covenant. Defendant maintains that the covenant did not create any duty to keep the elevator in a safe condition and that, therefore, there could be no breach of duty and no liability.

The lease consisted of a printed form with typewritten insertions and a typewritten rider. The instant term was for five years commencing October 1, 1949 and was a renewal of two previous leases for like periods. Clause 16 of the lease provided:

"Repairs 16. During the term of this lease, Lessor agrees to . . . make repairs and replacements to elevator, elevator machinery and elevator shaft, when required because of ordinary wear and tear, and any other repairs required as a result of the fault or neglect of the Lessor."

The precise question before us is whether defendant landlord is liable for injuries suffered as a result of the alleged breach of the covenant to repair and if so whether the evidence tended to show that his failure to perform the obligation was the proximate cause of the death of Robert Alaimo.

A majority of the cases deciding this question have held that there is no liability. For example see, Huey v. Barton, 328 Mich. 584, discussed in 26 Notre Dame

Law. 345; Prosser, Torts 658 (1941). However, a growing minority of jurisdictions have allowed recovery in tort for personal injuries resulting from a breach of the covenant to repair. For example see, Scibek v. O'Connell, 131 Conn. 557. In addition, the minority theory has been adopted in Restatement, Torts, § 357 (1934).

Aside from the decisions in Sontag v. O'Hare, 73 Ill. App. 432 and Breazeale v. Chicago Title & Trust Co., 293 Ill. App. 269, which represent opposite extremes on the question of liability, the Illinois cases can be said to follow the majority view that a landlord under an ordinary covenant to repair is not liable for injuries to tenant's invitee although the injuries are caused by a landlord's breach of the covenant. This rule is not without an exception, however, as the Breazeale case seems to indicate, but is subject to the limitations stated in Cromwell v. Allen, 151 Ill. App. 404 which appears to be the leading Illinois case on this subject.

Thus in Illinois the landlord may be liable in tort for damages resulting from his breach of the covenant to repair; (a) if the covenant carries the obligation to maintain the premises in a safe or reasonably safe condition, or (b) if the covenant is made under circumstances which indicated that tort damages were to be recoverable for injuries resulting from a breach of the covenant, or (c) if there is a duty to repair apart from the contract. Cromwell v. Allen, 151 Ill. App. 404, 408. In West Chicago Masonic Ass'n v. Cohn, 192 Ill. 210, 218, the Supreme Court said it recognized, as an exception to the general rule, that an owner may be liable for injuries resulting from failure to repair "if the covenant of the lease requires that he shall keep the premises in repair." This exception was restated by this court in Carson v. Weston Hotel Corp., 351 Ill. App. 523.

90

The lease was drawn by defendant upon the approved Chicago Real Estate Board form of industrial lease. The Non-liability of Lessor and the Keep Premises in Repair clauses in the printed form were modified by typewritten interpolations. As modified these read in part, (interpolations are italicized), *"Except as to repairs for which Lessor is responsible under this Lease* Lessor shall not be liable for any damage occasioned by failure to keep said premises in repair. . ." and "Lessor shall not be obliged to incur any expense *except as hereinafter provided,* for repairing any improvements upon . . . or connected therewith."

Clause 9 of the printed form allowed lessor free access "for purpose of examining" or "making any needful repairs or alterations . . . which Lessor might see fit to make. . . ." Added to the printed form of the lease were 10 clauses in a typewritten rider, including clause 16 placing the duty to repair on defendant landlord.

■ Ordinarily the duty of repair would have rested on the lessee. Here the burden of repairing the elevator was laid on the landlord and a right of entry reserved for this purpose. As pointed out in Trego v. Rubovits, 178 Ill. App. 127 at 133, ". . . dangerous consequences and heavy damages naturally and usually come as a result of not keeping such [elevators] in good condition and repair." In that case the court found that the covenant which cast the burden of repairing an elevator on the tenant was actually a covenant to keep the elevator in a safe condition. There the elevator was a passenger elevator but we think what the court said applies as well to the elevator in the instant case. The Supreme Court has recognized the dangerous potentialities of elevators and has required high care in their operation. Springer v. Ford, 189 Ill. 430. From the facts before us and the dangerous nature of the elevator, we think that the parties·

intended the agreement to be a covenant to keep the elevator in a safe or reasonably safe condition. We conclude therefore that the defendant landlord is liable for the injuries resulting in Alaimo's death if the breach of the covenant was the proximate cause of the accident.

■ Defendant contends that the lessor's covenant to repair became operative only on notice by the tenant. This is ordinarily so for the usual covenant to repair unless the lease shows an intention that he shall take notice from his own observation, Cromwell v. Allen, 151 Ill. App. 404, 408. There the court said that the intention will not be supplied where the lessor doesn't reserve the right to enter and examine. The plain inference therefore is that where that right is reserved that intention may be found.

■ The instant covenant to repair deals with a hazardous instrumentality and the parties must have had reason for giving this burden to the landlord. The covenant does not provide for notice and we think the provision concerning wear and tear does not imply a need for notice. This is not a covenant to repair generally but a covenant to repair covering a specific facility in the building. Under these circumstances since defendant had the right to examine the premises at reasonable times, he or his agent had the obligation to examine the elevator at reasonable periods to determine whether ordinary usage of the elevator had given rise to defects it was his duty to repair. The condition of the elevator was such that had a reasonable inspection been made the defects would have been noted and defendant would have been on notice. Scibek v. O'Connell, 131 Conn. 557, 560.

■ Having decided defendant may be liable we turn to the question whether there was evidence tending to prove (a) that there were defects due to ordinary wear and tear and (b) whether these defects were the proximate cause of decedent's death. In deciding this

92

question, we apply the familiar rule, taking as true the evidence favorable to plaintiff and draw the inferences most favorable to plaintiff.

■ There were no eyewitnesses and the event must be discovered, if at all, from circumstances. We think the favorable evidence and inferences tend to prove that plaintiff while in the exercise of due care was immediately before the accident engaged in making the elevator ready to receive the truck of merchandise; that before he could accomplish his objective a man on the floor above pressed down the lower section of the third floor door, reached in and pulled the hand cable to bring the elevator from the second to the third floor; that the downward movement of the lower section of the third floor door forced down the upper section of the second floor door; that as the upper section of the second floor door moved down the elevator moved up and trapped the decedent. If defendant had repaired the safety device to prevent the elevator doors from being opened when the elevator was not at that floor and if defendant had replaced the essential parts of the rope lock for preventing the movement of the elevator from a floor when the doors were opened, Alaimo, it appears, in the exercise of due care would not have been trapped and injured.

Plaintiff, Judge & Dolph for the use of Hartford Accident & Indemnity Company, alleged that Judge & Dolph was ordered to pay Alaimo's widow and children an award of $8,160 under the Workmen's Compensation Act; that the Hartford Accident & Indemnity Company, insurer of Judge & Dolph, is currently making monthly payments on the award; and that the Hartford Company is subrogated to the rights of the administratrix to the extent of the award. Defendant's answer denied these allegations.

■■ The theory of the insurer and its rights are governed by common-law subrogation principles, Grasse v. Dealer's Transport Co., 412 Ill. 179, and

should defendant be held liable to plaintiff administratrix the insurer is entitled to share in the recovery. A copy of the award of the Industrial Commission was introduced in the evidence and it was agreed at the trial that the Hartford Company was the "insurer under the award, and that this is for their use." The argument is made here that clause 5 of the lease is a bar to the claim of Judge & Dolph against defendant. Neither that nor any other defense was presented to the trial court.

It is our view that there was evidence tending to prove the elements of plaintiff's case and that the case should have gone to the jury. For this reason the court erred in directing a verdict for defendant and the judgment on the verdict is accordingly reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LEWE and FEINBERG, JJ., concur.