LERNON TURNER *et al.*, Plaintiffs-Appellants, v. 1212 S. MICHIGAN PARTNERSHIP *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—02—2279

Opinion filed January 31, 2005.

Berton N. Ring, of Berton N. Ring, P.C., of Chicago, for appellants.

James D. O'Connell and Glenn L. Udell, both of Brown, Udell & Pomerantz, Ltd., of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, Lernon and Adrianne Turner, appeal the grant of defendants' 1212 S. Michigan Partnership, LaSalle National Trust, N.A., as trustee of land trust No. 4220, f/k/a American National Bank and Trust Company, AIMCO Residential Group, L.P., a/k/a AIMCO and INSIGNIA Management Group (hereinafter collectively referred to as 1212 S. Michigan or 1212) motion to dismiss their complaint

with prejudice pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)). Plaintiffs contend that they presented a material factual dispute precluding a judgment on the pleadings. We affirm in part, reverse in part, and remand the cause for further proceedings.

## I. FACTUAL BACKGROUND

In February 2000, the Turners, who are a married couple, were tenants in an apartment building owned and managed by defendants, located at 1212 S. Michigan Avenue in Chicago. Pursuant to their lease with 1212, plaintiffs paid security deposits of $946 for their apartment, plus an additional $100 for their garage key.

In the summer of that year, plaintiffs experienced marital discord. Adrianne sought and received an order of protection against her husband, and Lernon vacated the apartment. Realizing that she could not continue to pay her rent with only her income, Adrianne approached 1212 to inquire about breaking the lease. 1212 allowed Adrianne to break the lease early, and she moved out of the apartment on August 16, 2000. 1212 did not refund plaintiffs' security deposit.

On November 2, 2001, the Turners filed a complaint against 1212, followed by an amended complaint on May 20, 2002. The Turners sought relief for 1212's failure to return their security deposit as required by the Chicago Residential Landlord Tenant Ordinance (RLTO) (Chicago Municipal Code § 5—12—010 *et seq.* (amended November 6, 1991)) in count I of their complaint; for failure to return their security deposit as required by the Illinois Security Deposit Return Act (Act) (765 ILCS 710/1 (West 2000)) in count II; for illegally commingling their security deposit with 1212's general funds in violation of the RLTO in count III; for breach of their lease through withholding the security deposit in count IV; and finally, in count V, for attempting to withhold the security deposit pursuant to a termination fee provided by the lease which purportedly conflicted with the RLTO's prohibition against the imposition of fees and charges against tenants terminating their leases early in the event of a prior arrangement of a sublease. Specifically, the Turners alleged:

"7. Defendants, on information and belief, failed to place the [Turners'] security deposit in a separate federally insured interest-bearing account, not subject to the creditors of the landlord, the defendants herein. Instead, Defendants commingled the security deposit payment with their own assets ***.

8. In or about July-August 2000, the parties agreed that Plaintiffs could vacate the premises and terminate the lease. Plaintiffs paid their rent for August 2000 in the amount of $946.00 and they vacated the apartment on or about August 16, 2000.

9. Defendants were obligated to return to the Plaintiffs their $1,046.00 security deposit.

10. Defendants chose to keep Plaintiffs' security deposit though they had no legal grounds to do so. ***

11. Defendants at no time delivered to Plaintiffs an itemized statement or other documentation, demonstrating a valid basis for withholding the security deposit ***."[1]

The Turners demanded trial of these claims by a jury.

On June 4, 2002, 1212 filed a verified motion to dismiss the amended complaint based on "other affirmative matter avoiding the legal effect of or defeating the claim[s]" of the Turners pursuant to section 2—619(a)(9) of the Code. In its motion, 1212 argued that it had agreed to permit Adriane Turner to terminate her lease early, but only on the condition that she forfeit her security deposit. According to the attached affidavit of John Spatz, one of 1212's building managers:

"3. In or about August 2000, Mrs. Turner met with me in my office at which time Mrs. Turner: (a) advised me that Plaintiffs were experiencing severe domestic problems ***; (b) provided me with a copy of an Order of Protection obtained by Mrs. Turner against her husband, Mr. Turner, on July 27, 2000; (c) informed me that, despite the Order of Protection, Mr. Turner was continuing to physically abuse her; and (d) pleaded with me to prematurely terminate Plaintiffs' Lease.

4. Although the Lease specifically provided for a 'Termination Fee' in the amount of $1,892.00 ***, due to Mrs. Turner's circumstances, I agreed to allowing Plaintiffs to prematurely terminate the Lease, in exchange for Plaintiffs' agreement to forfeit their $1,046.00 security deposit ***, and any interest accrued thereon ***.

5. Pursuant to [this agreement], on or about August 17, 2000: (a) the parties terminated the lease; (b) Plaintiffs abandoned the Premises; and (c) the Partnership retained Plaintiffs' Security Deposit."

1212 also contended that, had the termination of the lease not been so negotiated, it would still have been entitled to retain the deposit based on the Turners' breach of the lease with six months of rent yet due. In making this argument, 1212 relied on the security deposit provision of the Turner's lease which stated in pertinent part:

"3. SECURITY DEPOSIT: Lessee has deposited with Lessor the

---

[1]Though paragraphs 10 and 11 state two distinct theories of recovery under the RLTO, the Turners, somewhat confusingly, incorporate both in count I of their complaint.

security deposit as set forth above, to be retained by Lessor to ensure that Lessee shall fully perform each and every term and obligation provided in this Lease. If Lessee fully performs each and every obligation as provided in this lease and pays all sums due to Lessor, then Lessor, after the Lessee has surrendered possession of the premises and has delivered the keys thereto, shall refund said deposit to Lessee, including interest as is provided by law. If Lessee has failed to perform or comply with any of the provisions in this Lease, then Lessor shall deduct any damages from the security deposit."

As to the Turners' claim that their security deposit had been wrongfully withheld because 1212 provided no statement of itemized deductions from the security deposit, 1212 denied any responsibility under the law to provide such a statement, arguing that both the RLTO and the Act only provided for itemized statements when deductions were made for property damage, whereas it claimed entitlement to the security deposit based on a surrender agreement or, alternatively, pursuant to the security deposit provision based on the Turners' breach of the lease. 1212 also claimed that an itemized statement had been sent to the Turners. 1212 referred to Spatz's averment to that effect in his affidavit and provided a copy of a statement which reflected that the deposit was "[a]pplied to [b]alance" on the date Adrianne moved out of the building.

1212 denied the allegation in the Turners' complaint that their security deposit had ever been commingled with 1212's funds. In support of this contention, 1212 presented the affidavit of Nancy Martinec, another of the managers at the 1212 S. Michigan Avenue apartment building, in which she stated:

"3. On or about February 11, 2000, the Partnership received a security deposit from Plaintiffs.

4. On or about February 11, 2000, the Partnership placed the Security Deposit in to Security Deposit Account No. 5330059593, a segregated, interest-bearing account with American National Bank and Trust, Chicago, Illinois."

However, in her subsequent deposition, Martinec admitted that standard operating procedure for 1212 was actually to deposit tenants' security deposits into one account and then to make a bulk transfer of those funds into a security deposit account at a later date. She testified that she believed the Turners' security deposit had been transferred to the security deposit account as part of a $10,000 transfer made on February 22, 2000, but did not corroborate that assertion of belief with any other evidence.

Finally, 1212 argued that the termination fee provision in its lease was legal, but that even if it were not, the Turners would have no

cause of action because their security deposit was not withheld pursuant to that provision.

Plaintiffs responded and moved to strike the motion to dismiss, contending that the motion did not present proper affirmative matter negating their cause of action but rather merely contested the complaint's allegations. Additionally, the Turners moved to strike the motion's supporting affidavits, arguing that the affidavits' averments were conclusory and without foundation.

In alternatively opposing the merits of 1212's section 2—619(a)(9) motion to dismiss, the Turners attached the affidavit of Adrianne Turner to their response to the motion, in which she stated:

"2. On or about August 3, 2000, I met with John Spatz. I previously gave a copy of the Protective Order to Mr. Spatz \*\*\*. \*\*\* At the meeting with Mr. Spatz, I told Mr. Spatz that my husband and myself had separated due to marital disagreements and that Mr. Turner had already moved out of the apartment \*\*\*. \*\*\*

3. I then told Mr. Spatz a few days later I was not employed and I was in the process of applying for governmental assistance \*\*\*. \*\*\* I then told Mr. Spatz I was moving out since I did not have any money to pay for the rent and I would be moving to my parent's house. \*\*\* [Spatz] said he would let me out of the lease, knowing my circumstances. \*\*\*

4. I never discussed the interest or the security deposit with Mr. Spatz or anyone else with the landlord in August, 2000 or any time thereafter. \*\*\*

5. I filled out a post office new address change of address form [sic], with my new address before I moved out.

6. I never received any documents from the landlord \*\*\* as discussed in Mr. Spatz's affidavit.

7. On 2-11-00 I tendered two money orders for the security deposit to 1212 South Michigan as follows:

A. Money Order Number 1087798 in the amount of $946. Attached hereto is the front and back of that mortgage order which shows that the money order was deposited into the 'management [sic] Group 1212 S. Michigan operating account'; \*\*\* and

B. Money Order Number 1097800 in the amount of $100. Attached hereto is the front and back of that money order which shows that the money order was deposited in the 'Insignia Management Group 1212 S. Michigan operating Account.' "

Turner's counsel also filed an affidavit pursuant to Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)) indicating that he could not adequately respond to 1212's motion based on the incomplete state of discovery, which he partly blamed on 1212 "stonewalling," and filed a motion to show cause why Spatz should not be held in contempt for failing to appear for his deposition.

The circuit court dismissed the Turners' complaint in its entirety and denied the motions to strike, the motion to show cause, and the Turners' Rule 191(b) affidavit on July 1, 2002. The Turners seek to appeal from all of these determinations, as well as a previous order granting 1212 an extension of time in which to answer the Turners' requests to admit facts. However, the Turners only argued against the dismissal of counts I, II, III and V of their complaint in their opening brief, and, hence, these will be the only challenges considered by this court. 188 Ill. 2d R. 341(e)(7) ("The appellant's brief shall contain *** [a]rgument, which shall contain the contentions of the appellant" and "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

## II. ANALYSIS

■ The Turners first claim procedural error by contending that the circuit court considered 1212's motion under section 2—619(a)(9) of the Code, when it could only properly have been brought as a summary judgment motion under section 2—1005 of the Code (735 ILCS 5/2—1005 (West 2002)). The Turners argue that 1212's motion to dismiss sought to contest the truth of the allegations in their complaint with information beyond the pleadings, appropriate under section 2—1005, but inappropriate under section 2—619(a)(9) where a complaint's allegations are accepted as true and legally sufficient, and are only defeated by extrinsic information otherwise defeating the claim. See generally *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073, 603 N.E.2d 1215, 1221 (1992). The Turners ask us to strike 1212's motion as a sanction for its misdesignation. We decline to do so. The bulk of 1212's attacks on the complaint are appropriately addressed under section 2—619(a)(9), and we may consider those that are not under their appropriate code sections so long as the Turners would not be prejudiced by our doing so. *Schramer v. Tiger Athletic Ass'n of Aurora*, 351 Ill. App. 3d 1016, 1019, 815 N.E.2d 994, 996 (2004). In that regard, we detect no such prejudice nor did the Turners purport to identify any such resultant prejudice in their arguments.

A "motion to dismiss pursuant to section 2—619(a)(9) presents affirmative matters that avoid the legal effect of [a] plaintiff's claim." *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 516, 701 N.E.2d 99, 101 (1998). The section thereby "furnishes a mechanism for the disposition of issues of law and easily proved issues of fact." *Davis v. Chicago Police Board*, 268 Ill. App. 3d 851, 854, 645 N.E.2d 274, 276 (1994). As such, "it amounts to essentially a summary judgment procedure." *Palmisano v. Connell*, 179 Ill. App. 3d 1089, 1097, 534 N.E.2d 1243, 1249 (1989).

Thus, a "section 2—619 motion should be granted by the trial court if, after construing the documents supporting the motion in the light most favorable to the opposing party, it finds no disputed issues of fact [citation] and concludes that the affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, unsupported fact [citation]." *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343, 633 N.E.2d 1003, 1008 (1994); compare with *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1210 (1992), and *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736, 739-40 (1993) (applying substantially the same standards under section 2—1005). "Once a defendant satisfies [its] initial burden of going forward on the section 2—619(a)(9) motion to dismiss [by demonstrating entitlement to judgment], the burden then shifts to plaintiff, who must establish that the affirmative defense asserted either is unfounded as a matter of law or requires the resolution of an essential element of material fact before it is proven." *Barrett v. Fonorow*, 343 Ill. App. 3d 1184, 1189, 799 N.E.2d 916, 921 (2003); compare with *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89, 737 N.E.2d 662, 668 (2000) (applying substantially the same standards under section 2—1005).

The only significant difference between the treatment of a motion under section 2—619(a)(9) as opposed to under section 2—1005 is that, under the former, a judge potentially may weigh evidence and resolve factual disputes, while under the latter, a material factual dispute will preclude summary adjudication. See 4 R. Michael, Illinois Practice § 38.3, at 224 (1989). However, even that difference is negated when, as here, the nonmoving party has filed a jury demand; in that event, just as with a section 2—1005 motion, a dispute of material fact under a section 2—619(a)(9) motion must be left to the jury. 735 ILCS 5/2—619(c) (West 2002) ("[i]f a material and genuine disputed question of fact is raised the court *** shall *** deny [the motion] if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time"); *Barber-Colman Co.*, 236 Ill. App. 3d at 1072, 603 N.E.2d at 1221, quoting 4 R. Michael, Illinois Practice § 38.3, at 224 (1989) (emphasis added) (" 'they [section 2—619(a)(9) motions] allow a determination of the motion on the merits even if there is a genuine issue of material fact raised by the affirmative matter *as long as the party opposing the motion has not filed a jury demand*' ").

Thus, even if 1212's motion to dismiss directly challenged the facts alleged in the Turners' pleading and therefore should more appropriately have been filed as a summary judgment motion, rather

than a section 2—619 motion, no resultant prejudice to the Turners can be perceived. The motion would still have been subject to the same analysis and disposition. In either event, the test would be the same, namely, whether based on extrinsic submissions there remained an issue of material fact not to be decided summarily.

Nevertheless, as previously indicated, the bulk of the challenges in 1212's motion to dismiss properly fall under section 2—619(a)(9), presenting affirmative matter potentially defeating the claim without challenging the truth of the allegations in the complaint. For example, in the challenge to count I, 1212's affidavits do not dispute the Turners' allegation that the parties agreed that the Turners could break the lease and vacate the apartment. Instead, Spatz's affidavit presents additional matter in the form of an additional term in the surrender agreement that, left unchallenged, could present a bar to any claim against 1212 for failing to return the Turners' security deposit. Likewise, the challenge to count II does not dispute the truth of the Turners' assertion that 1212 withheld their security deposit without providing an itemized statement of deductions; rather, it presents the Spatz affidavit as affirmative matter to show that the deposit was withheld pursuant to a surrender agreement, and not for property damage, therefore falling outside of the statutory provisions requiring an itemized statement of deductions and defeating the claim.

However, we do agree with the Turners that 1212's challenge to count III (which charges commingling of the security deposit) is misdesignated as a section 2—619(a)(9) motion because the motion and its supporting extrinsic submissions deny any such commingling and therefore directly traverse the allegations contained in count III. Regardless, since, as discussed above, the Turners have not demonstrated any resulting prejudice from this designation, we will evaluate the challenge to that count as if presented in a section 2—1005 motion.

■ Turning then to review the actual dismissal of count I of the complaint, while we reject the Turners' contention that the circuit court was in procedural error by considering 1212's motion to dismiss as a section 2—619(a)(9) motion, we agree with the Turners' substantive argument that triable issues of fact as to whether any agreement had been reached between the parties surrounding the security deposit were presented through Adrianne's affidavit and that the dismissal of the complaint was therefore improper. Adrianne's affidavit explicitly disputed the content in the Spatz affidavit that there was an express, mutual agreement that the Turners would forfeit their security deposit in exchange for their early departure. In her affidavit, Adrianne denied ever discussing the security deposit with Spatz in arranging for the

termination of the lease, contrary to Spatz's averments. Further, as the Turners contend, Adrianne's account permits a reasonable inference that her early surrender would be permitted without any forfeiture imposed by 1212, based on her marital difficulties. While that inference is not conclusive, it would be sufficient to create a question of material fact precluding summary adjudication. Therefore, 1212's motion to dismiss count I should have been denied.

1212 suggests, however, that we need not reverse and remand based on this factual dispute because the lease provides for its retention of the security deposit in the event the tenant breaches the lease, which the Turners allegedly did by terminating early. We disagree.

First and foremost, under either the account presented in the complaint and Adrianne's affidavit or in Spatz's affidavit, there would not have been a breach of the lease as there was some variety of surrender agreement terminating the lease. The party's accounts only differ as to what conditions were imposed in the surrender agreement. Second, the terms of the lease itself do not support 1212's argument that it could instantaneously claim the entire deposit. The security deposit provision states only that "[i]f Lessee has failed to perform or comply with any of the provisions in this Lease, then Lessor shall deduct *any damages* from the security deposit." (Emphasis added.) This is not to say that 1212 could not have suffered actual damages recoverable under the RLTO which would subsume the security deposit, but that is a question to be proved to the trier of fact, not presumed from the breach itself. See *Midwest Software, Ltd. v. Willie Washer Manufacturing Co.*, 258 Ill. App. 3d 1029, 1055, 630 N.E.2d 1088, 1105 (1994) ("the burden rests upon a party seeking damages to establish not only that it has sustained damages, but also to provide a reasonable basis for computation of those damages. [Citation.] Speculation and conjecture are not proper bases for an award of damages"). As the Turners point out, in the event 1212 was able to immediately relet the apartment, 1212 would have suffered no damages.

■ We next address the dismissal of count II of the Turners' complaint that alleged that 1212 violated the Act by withholding their security deposit without providing an itemized statement of deductions against their security deposit. As the RLTO security deposit return provision parallels the provision in the Act, our analysis necessarily will impact that claim, too.

The Act provides "[a] lessor *** may not withhold any part of [a security deposit] as compensation for property damage unless he has *** delivered *** an itemized statement of the damage allegedly caused to the premises." 765 ILCS 710/1 (West 2000). Section 5—12—080(d)(2) of the RLTO similarly allows a landlord to deduct from a

tenant's security deposit "[a] reasonable amount necessary to repair any damage caused to the premises by the tenant," provided, however, that "[i]n case of such damage, the landlord shall deliver or mail \*\*\* an itemized statement of the damages allegedly caused to the premises." Chicago Municipal Code § 5—12—080(d)(2) (added May 14, 1997). Thus, both laws require the itemization of security deposit deductions only when those deductions are based on property damage. See *Hayward v. Tinervin*, 123 Ill. App. 3d 302, 305, 462 N.E.2d 896, 898 (1984) ("The statute [the Act] regulates withholding of the deposit only when the withholding is 'as compensation for property damage.' Refusal of the lessor to return the security deposit within 'the time limits provided' is not enough to trigger the operation of the last paragraph of the legislation, which provides for double damage and attorney's fees"). However, landlords bear the burden of presenting some evidence "of a good faith dispute for other reasons in order to avoid a presumption that the deposit is being withheld because of a claim of [property] damages." *Hayward*, 123 Ill. App. 3d at 306, 462 N.E.2d at 899.

Here, 1212 claims that it withheld the security deposit as part of the surrender agreement or, alternatively, for the Turners' breach of their lease, and, in both cases, for the unpaid rent resulting from early termination. While the Turners dispute that there was any agreement to surrender the security deposit, they make no counter-contention that the deposit was withheld to compensate for property damage. Indeed, the Turners represented at oral argument, and through Adrianne's affidavit, that they returned the apartment to 1212 in ready-to-move-in condition, without any property damage beyond normal wear and tear. Under this state of affairs, it appears to us that there is no actual dispute that the security deposit dispute does not involve considerations of property damage. Thus, there has been no violation of the Act or RLTO for failure to provide an itemized statement of deductions from the security deposit. While it might be beneficial for tenants to receive an itemized statement detailing the disposition of their security deposits for any reason, it would be inappropriate for us to read terms, exceptions, or procedures into an unambiguous statute that the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83, 630 N.E.2d 820, 823 (1994); *Morris v. Schwartz*, 326 Ill. App. 274, 306, 61 N.E.2d 690, 703 (1945) (Scanlan, J., specially concurring) ("nor have we the right, in interpreting this Act, to read into it provisions that, in our judgment, would tend to make the proceedings under the Act more equitable as between the parties"). Accordingly, there was no error in dismissing this count of the Turners' complaint.

■ Turning then to the dismissal of count III claiming illegal commingling of the security deposit with 1212's general funds, as noted earlier, we agree with the Turners that the portion of the motion to dismiss challenging that claim was not appropriate under section 2—619(a)(9) and was, in fact, a summary judgment motion under section 2—1005 since the pleadings do address commingling in explicit terms and the motion to dismiss seeks to traverse the complaint's allegations. Reviewing this portion of the motion to dismiss as a section 2—1005 summary judgment motion, we find material disputed facts that should have precluded judgment below.

Martinec claimed in her affidavit that 1212 deposited the Turners' security deposit into a "segregated, interest-bearing account," specifically "Security Deposit Account No. 5330059593" with American National Bank and Trust, on February 11, 2000. However, the canceled money orders comprising the security deposit, attached to Adrianne's affidavit, reveal deposit dates of February 15, 2000, into the "Insignia Management Group 1212 S. Michigan Operating Fund." Further, later, in her deposition, Martinec admitted that standard operating procedure for 1212 was actually to deposit tenants' security deposits into one account and then to make a bulk transfer of those funds into a security deposit account at a later date. She testified that she believed the Turners' security deposit had been transferred to the security deposit account as part of a $10,000 transfer made on February 22, 2000, but did not corroborate that belief with any other evidence. Hence, there were factual questions regarding whether the funds were commingled and, if so, for how long, to be resolved by a jury.

■ Lastly, we consider the Turners' appeal from the dismissal of count V of the complaint which alleges in brief that 1212 unlawfully attempted to enforce an early termination fee that the lease provided in contravention of the RLTO. We note, without first addressing whether the early termination fee provided under the lease was unlawful, that based upon both the Turners' and 1212's extrinsic submissions in support of the positions they took in the circuit court pertaining to the motion to dismiss that there was never any attempt to enforce the early termination provision. The Turners' own affidavit which they filed below in opposition to 1212's motion to dismiss avers that 1212 accepted their early termination of the lease *carte blanche*, without any surcharge, be it a termination fee or any retention of any part of their security deposit. The Turners continue to maintain this position in their appellate briefs as well. Likewise, neither has 1212 in its motion to dismiss, supporting affidavits, nor in its brief on appeal stated that it ever attempted to enforce an early termination fee, aver-

ring only that notwithstanding the provision in the lease for an early termination fee, it agreed to accept early surrender subject to its retention of the security deposit to cover unpaid rent. Consequently, the issue is moot.

More overridingly, even if there would have been an overt attempt to enforce the early termination fee, the Turners have failed to demonstrate that the attempt would be illegal under the RLTO. The specific language of section 5—12—120 on which the Turners rely provides that in the event a tenant terminates a lease prior to its contractual expiration, "[t]he landlord shall accept a reasonable sublease proposed by the tenant without an assessment of additional fees or charges." Chicago Municipal Code § 5—12—120 (added September 8, 1986). However, the Turners do not purport to allege either in their complaint, or in response to 1212's motion to dismiss, or even in their appellate briefs for that matter, that they ever arranged for a sublease of their apartment. Hence, the protection against early termination fees provided under the specific language of section 5—12—120 would not be applicable. The Turners would contend, however, that they are protected by the language of this provision because the landlord shares in the burden to procure a subtenant even when the tenant fails to do so. This contention is contrary to the specific language of section 5—12—120 which, as stated earlier, says that the landlord shall accept a reasonable sublease *proposed by the tenant*" (emphasis added), which clearly indicates that it is the tenant's burden to procure a subtenant. Even more specious is the Turners' follow-up contention that would appear to have us redefine subleases to even include those leases directly entered into by a landlord with a new tenant during a period encompassed under the original lease. Not only does this contention suffer from the same statutory impediment pointed out above with respect to their contention that landlords share the burden of procuring a subtenant under a sublease, but would urge an interpretation of the term contrary to the clear meaning of the term "sublease" as a lease between an existing tenant as a sublessor and his tenant as a sublessee for the duration or a portion of the duration of the term remaining under the sublessor's lease with the landlord. See Black's Law Dictionary 1439 (7th ed. 1999) ("**sublease**, *n*. A lease by a lessee to a third party").

For all the foregoing reasons, we reverse the dismissal of counts I and III of the Turners' complaint. However, we affirm the dismissal of counts II and V.

Affirmed in part and reversed in part; cause remanded.

McBRIDE and O'MALLEY, JJ., concur.