**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190771-U

Order filed August 5, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| JOHN PROVENZANO, as Special Representative of the Estate of MARLENE PROVENZANO, Deceased, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0771 Circuit No. 16-L-141 |
| CRYSTAL PROVENZANO BROYLES and CATHERINE PROVENZANO, | ) ) ) | The Honorable |
| Defendants-Appellees. | ) ) ) | Eugene P. Daugherity, Judge, presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justice Lytton concurred in the judgment.
Justice Holdridge specially concurred.

**ORDER**

¶ 1     *Held*:  In a wrongful death action, the circuit court erred when it granted a section 2-619 motion to dismiss count I of the complaint, which alleged the breach of an express promise to repair, but did not err when it granted a section 2-615 motion to dismiss count II of the complaint, which alleged the beach of a voluntary undertaking.

¶ 2     In 2017, Marlene Provenzano tripped on a raised board on a wooden boardwalk between her residence and the detached garage. Marlene later died from her injuries. The plaintiff, John

Provenzano, who was Marlene's special representative, filed suit against the defendants, Crystal Provenzano Broyles and Catherine Provenzano, alleging (1) breach of an express promise to repair, and (2) breach of a voluntary undertaking. The defendants moved to dismiss both counts. After a hearing, the circuit court dismissed both counts with prejudice. On appeal, John argues that the circuit court erred when it dismissed both counts. We affirm in part and reverse in part and remand for further proceedings.

¶ 3                                    I.  BACKGROUND

¶ 4        On March 17, 2016, 82-year-old Marlene Provenzano tripped on a raised board and fell while walking across a wooden boardwalk between the garage and residence in which she was living. Marlene hit her head on concrete and died the next day from her injuries. The board was raised approximately 3/4-inch to 1 inch above the rest of the boardwalk.

¶ 5        Marlene had been living in her residence since 2005. The property was owned by her granddaughters, defendants Crystal and Catherine, who had an oral agreement with Marlene to let her reside there rent-free as long as she paid the utility bills. Sometime between 2009 and 2011, Marlene allowed her daughter, Irene Provenzano Fritz, to move in with her.

¶ 6        Marlene's son, plaintiff John, and his sons performed general maintenance of the residence over the years. However, they did not undertake any major tasks such as plumbing work. Crystal stated that Marlene was responsible for minor repairs, but "[i]f it was a bigger thing, they called me or my dad." She recalled having to bring in a plumber a few times to make some repairs. When Irene was asked what repairs John would perform at the residence, she stated, "He would look at it and, if he couldn't fix it, then he'd hire someone to fix it." This included hiring a plumber several times. Irene also stated that Crystal's husband had been to the residence a few times to do "chores."

2

¶ 7 Crystal, who was John's daughter, was aware of the raised board, as Irene had told her about it at an unspecified time prior to Marlene's fall. John believed that Irene was the one who told him to fix the board. However, he disregarded that request because "Irene talks so much, you can't take everything serious." Irene stated that she asked John, John's sons, Crystal, and Crystal's husband to fix the board, but none of them responded to her.

¶ 8 On October 28, 2016, John, as special representative of Marlene, filed a complaint against Crystal and Catherine sounding in premises liability. The defendants filed a jury demand and later moved for summary judgment, which the circuit court granted as to the premises liability claim but denied in part to allow John to file an amended complaint asserting a claim for voluntary undertaking of a duty to repair.

¶ 9 The first amended complaint essentially repled the premises liability action. The defendants filed motions to strike and dismiss the first amended complaint, alleging that John had included allegations that were rejected by the circuit court at the summary judgment hearing and that the voluntary undertaking claim was legally deficient. The circuit court granted the motion to dismiss but again granted John leave to replead or amend.

¶ 10 John then filed a second amended complaint, which repled premises liability in count I and added two other counts: one for breach of express promise to repair and one for voluntary undertaking. John alleged that Crystal had promised to repair the raised board but failed to do so.

¶ 11 The defendants moved to strike the premises liability count and to dismiss counts II and III. They alleged that counts II and III were identical causes of action and that both were legally deficient, in part because John did not allege that Marlene relied upon the voluntary undertaking

3

to her detriment. After a hearing, the circuit court struck count I, dismissed count II with prejudice, and dismissed count III with leave to replead.

¶ 12 John filed a third amended complaint, which repled premises liability in count I and alleged breach of voluntary undertaking in count II. The defendants moved to strike count II as legally deficient because it was identical to the previously dismissed count II. The circuit court granted the motion to strike but once again granted John leave to refile.

¶ 13 John's fourth amended complaint alleged breach of express promise to repair in count I and breach of voluntary undertaking in count II. In part, count I alleged that (1) around 2005, Crystal and Catherine entered into a leasehold agreement with Marlene in which they "covenanted to keep the premises in good repair for the duration of the leasehold;" (2) during the time Marlene lived in the residence, Crystal and Catherine regularly maintained the premises; and (3) prior to Marlene's trip-and-fall, Crystal had agreed to repair the raised board. In part, count II alleged that (1) Irene told Crystal about the raised board and Crystal agreed to fix it, and (2) Marlene reasonably relied on that promise and forwent any other efforts to get the board fixed.

¶ 14 The defendants moved to dismiss the fourth amended complaint. Regarding count I, they alleged that the count failed to assert the existence of a contractual agreement and was therefore subject to dismissal under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) and that there was no formal lease agreement, rendering the count subject to dismissal under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). Regarding count II, the defendants argued that it was again identical in substance to counts previously dismissed by the circuit court.

¶ 15 After a hearing, the circuit court dismissed count I pursuant to section 2-619 and Count II pursuant to section 2-615. Regarding count I, the court found that John did not plead that the defendants undertook a general covenant to perform all repairs to the property and that in fact "there was no contractual undertaking that the defendants obligated themselves to making the necessary repairs because there was no *** consideration to support that."

¶ 16 Regarding count II, the court noted that it "had the benefit of the briefings on the pleading practice" that had previously occurred in the case and that

"All that was done is [Marlene] here asserted to the defendant there's a loose board that needs to be repaired – or be repaired and the defendant indicated we will take care of it. That is a gratuitous promise, as I said, unsupported by any type of contractual undertaking and fails the test under the voluntary undertaking on reliance because the plaintiff knew what the actual circumstances were and was equally capable along with the defendant of ascertaining the same."

¶ 17 Both counts were dismissed with prejudice, and John appealed.

¶ 18                                   II. ANALYSIS

¶ 19 John's first argument on appeal is that the circuit court erred when it dismissed count I pursuant to section 2-619 of the Code. Specifically, John alleges that the court erred when it (1) found that no enforceable lease agreement existed between the parties, and (2) inquired into the sufficiency of consideration between the parties.

¶ 20 Section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)) provides that a defendant may move to dismiss an action based on "other affirmative matter avoiding the legal

5

effect of or defeating the claim." *Id.* We review *de novo* a circuit court's decision to grant a section 2-619 motion to dismiss. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008).

¶ 21 Section 2-619 of the Code "furnishes a mechanism for the disposition of issues of law and easily proved issues of fact" (*Davis v. Chicago Police Board*, 268 Ill. App. 3d 851, 854 (1995)). As stated by the First District:

> "[A] section 2-619 motion should be granted by the trial court, if after construing the documents supporting the motion in the light most favorable to the opposing party, it finds no disputed issues of fact [citation] and concludes that the affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, unsupported fact [citation]." [Citations.] Once a defendant satisfies [its] initial burden going forward on the section 2-619(a)(9) motion to dismiss [by demonstrating entitlement to judgment], the burden shifts to plaintiff, who must establish that the affirmative defense asserted either is unfounded as a matter of law or requires the resolution of an essential element of material fact before it is proven. [Citations.]" (Internal quotation marks omitted.) *Turner v. 1212 South Michigan Partnership*, 355 Ill. App. 3d 885, 892 (2005).

¶ 22 Significantly, the circuit court can weigh evidence and resolve factual disputes when ruling on a section 2-619 motion to dismiss as long as the non-moving party has not filed a jury demand. *Id.* Because John did not file a jury demand in this case, the circuit court was not

prohibited from determining issues of fact when ruling on the defendants' motion to dismiss. See 735 ILCS 5/2-619(c) (West 2018); 735 ILCS 5/2-1105(a) (West 2018) (stating that "[a] plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced").

¶ 23        "Generally, landlords[1] are not liable for injuries occurring on premises leased to a tenant and under the tenant's control." *Betts v. Crawshaw*, 248 Ill. App. 3d 735, 738 (1993). However, Illinois has long recognized exceptions to this general principle. See, *e.g.*, *Gridley v. City of Bloomington*, 68 Ill. 47, 51 (1873) (recognizing an exception that "[w]here the landlord has, by an express agreement between the tenant and himself, agreed to keep the premises in repair so that, in case of a recovery against the tenant, he would have his remedy over; then, to avoid circuity of action, the party injured by the defect and want of repair may have his action in the first instance against the landlord, but such express agreement must be distinctly proved"). In *Alaimo v. Du Pont*, 4 Ill. App. 2d 85, 90 (1954), the First District cited to Section 357 of the Restatement (First) of Torts (1934) and Illinois cases when it described this exception to the general rule as follows:

> "Thus in Illinois the landlord may be liable in tort for
> damages resulting from his breach of the covenant to repair; (a) if
> the covenant carries the obligation to maintain the premises in a
> safe or reasonably safe condition, or (b) if the covenant is made
> under circumstances which indicated that tort damages were to be

---

[1] A landlord-tenant relationship may be found in even the loose and casual dealings of the parties in this case. "The relationship of landlord and tenant may be defined generally as that which arises from a contract [an agreement] by which one person occupies the real property of another with his or her permission and in subordination to the other person's rights." 52 C.J.S. *Landlord & Tenant* § 1 (2020).

7

recoverable for injuries resulting from a breach of the covenant, or

(c) if there is a duty to repair apart from the contract."

¶ 24　　　　Subsequently, Illinois courts adopted this principle as it appeared in section 357 of the Restatement (Second) of Torts (1965). See *Betts v. Crenshaw*, 248 Ill. App. 3d 735, 738 (1993) (citing *Looger v. Reynolds*, 25 Ill. App. 3d 1042, 1044 (3d Dist. 1975)). Section 357 provides, in relevant part:

"A lessor of land is subject to liability for physical harm

caused to his lessee *** by a condition of disrepair *** arising

after the lessee has taken possession if

(a) the lessor, as such, has contracted by a covenant in the

lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons

upon the land which the performance of the lessor's agreement

would have prevented, and

(c) the lessor fails to exercise reasonable care to perform

his contract." Restatement (Second) of Torts § 357 (1965).

¶ 25　　　　In this case, the fourth amended complaint alleged, in relevant part, that (1) around 2005, Crystal and Catherine entered into a leasehold agreement with Marlene in which they "covenanted to keep the premises in good repair for the duration of the leasehold;" (2) during the time Marlene lived in the residence, Crystal and Catherine regularly maintained the premises; and (3) prior to Marlene's trip-and-fall, Crystal had agreed to repair the raised board. For purposes of the motion to dismiss, we take these allegations as true.

8

¶ 26    The defendants claim that Crystal's deposition testimony defeated the complaint's allegations. Specifically, Crystal testified that the oral "lease agreement" was simply that Marlene was allowed to reside in the house rent-free as long as she paid the utility bills.

¶ 27    However, it is too facile to conclude that the deposition testimony definitively defeated the complaint's allegations. The depositions indicated that there may have been some sort of agreement regarding repairs. Crystal stated that while Marlene was responsible for minor repairs, "[i]f it was a bigger thing, they called me or [John]." Crystal further stated that she had hired a plumber several times to perform repairs. Under these circumstances, construing the supporting materials in the light most favorable to the plaintiff, we hold that the defendants did not meet their burden of establishing that no agreement existed regarding repairs but merely created a material factual dispute as to the existence of a covenant. See *Turner*, 355 Ill. App. 3d at 892. We emphasize that our ruling is not to be construed as a comment on the merits of count I. Rather, we merely hold that the defendants did not meet their burden of establishing an affirmative matter entitling them to the dismissal of count I under section 2-619.

¶ 28    John's second argument on appeal is that the circuit court erred when it dismissed count II pursuant to section 2-615 of the Code.

¶ 29    A motion to dismiss filed pursuant to section 2-615 of the Code attacks the legal sufficiency of a complaint based on facial defects. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). When reviewing the sufficiency of a complaint, a court must accept as true all well pled facts and all reasonable inferences arising from those facts. *Bell v. Hutsell*, 2011 IL 110724, ¶ 9. The allegations in the complaint are construed in the light most favorable to the plaintiff. *Id.* In general, a court considers only the pleadings when ruling on a section 2-615 motion to dismiss. *Mutual Tobacco Co. v. Halpin*, 414 Ill. 226, 231 (1953). We review *de novo*

a circuit court's decision to grant a section 2-615 motion to dismiss. *Berry v. City of Chicago*, 2020 IL 124999, ¶ 25.

¶ 30    When a plaintiff alleges negligence via a voluntary undertaking theory of liability, Illinois courts look to section 323 of the Restatement (Second) of Torts (1965) for guidance. Section 323 provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965).

An essential element in a negligence allegation of nonfeasance is reliance on the alleged tortfeasor's promise. *Bell*, 2011 IL 110724, ¶ 23. In addition, we note that "[c]ourts narrowly construe the voluntary-undertaking theory." *Buerkett v. Illinois Power Co.*, 384 Ill. App, 3d 418, 427 (2008).

¶ 31    In this case, count II of the fourth amended complaint alleged, in part, that (1) Irene told Crystal about the raised board and Crystal agreed to fix it, and (2) Marlene reasonably relied on that promise and forwent any other efforts to get the board fixed. Not only did the complaint fail to allege that Marlene was the recipient of a promise to repair, but also it contained no allegation

10

that Marlene was unaware of the continued existence of the raised board. Regarding the latter, it has been stated that

> "Reliance may reasonably be placed where there is a deceptive appearance that performance had been made, or where a representation of performance has been communicated to plaintiff by defendant, or where plaintiff is otherwise prevented from obtaining knowledge or substitute performance of the undertaking. But, to justify reliance, plaintiff must be unaware of the actual circumstances and not equally capable of determining such facts."
>
> *Chisholm v. Stephens*, 47 Ill. App. 3d 999, 1007 (1977).

In other words, "where the tenant knew the repairs were not adequate or proper, no recovery can be had for any injuries caused thereby." *Id.* at 1008. Significantly, the fourth amended complaint failed to allege that Marlene knew there was need for a repair; that she knew of Crystal's alleged agreement to make a repair; that she had reason to believe that the repair had been made and changed her position accordingly; or that she had no way of ascertaining whether the repair had been made. Under these circumstances, we hold that count II failed to state a claim for voluntary undertaking. Accordingly, we hold that the circuit court did not err when it dismissed count II with prejudice pursuant to section 2-615 of the Code.

¶ 32                                  III.  CONCLUSION

¶ 33        The judgment of the circuit court of La Salle County is affirmed in part and reversed in part and the cause is remanded for further proceedings.

¶ 34        Affirmed in part and reversed in part; cause remanded.

¶ 35        JUSTICE HOLDRIDGE, specially concurring:

11

¶ 35        I join the majority's judgment as to both counts of the plaintiff's complaint. I agree with the majority that the trial court erred by dismissing count I of the complaint because it stated a claim against the defendants for the breach of an express promise to repair. The plaintiff alleged facts supporting each element of such a claim by pleading that: (1) the defendants contracted to keep the premises in repair; (2) the disrepair created an unreasonable risk to Marlene which the performance of the defendants' agreement would have prevented; and (3) the defendants failed to perform their contract, which caused fatal injuries to Marlene. I write separately to share my thoughts regarding the defendants' argument that the "*de minimis*" rule preludes the plaintiff from establishing that the defendants had a duty to repair the raised board in the boardwalk.

¶ 36        Absent evidence of aggravating circumstances, an owner of land "has no duty to repair *de minimis* defects on his property." *St. Martin v. First Hospitality Group, Inc.*, 2014 IL App (2d) 130505, ¶ 13; *Hartung v. Maple Investment and Development Corp.*, 243 Ill. App. 3d 811, 815 (1993). In determining whether a defect is *de minimis*, "each case must be examined as to its own particular facts." *Warner v. City of Chicago*, 72 Ill.2d 100, 104 (1978). There is no mathematical formula or bright-line test for determining when a defect is so minor as to not be actionable (*id.*; see also *Hartung*, 243 Ill.App.3d at 814; *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 122 (1993)) and no *per se* rule as a matter of law based on the size of the defect (*Arvidson v. City of Elmhurst*, 11 Ill. 2d 601 (1957)). The surrounding circumstances must be taken into consideration (*Birck,* 241 Ill. App. 3d at 122), and if aggravating circumstances are present, even very small defects may be actionable (see, *e.g.*, *Bartkowiak v. City of Aurora*, 2018 IL App (2d) 170406 (holding that the presence of aggravating circumstances rendered an otherwise *de minimis* defect of approximately 1.5 inches actionable)).

12

¶ 37    In this case, it is not clear that the *de minimis* rule should apply as to Count 1 because the defendants' duty to maintain the premises allegedly arose from a contractual obligation (*i.e.*, the defendants' promise to make repairs for the lessee) rather than from ordinary rules of premises liability. The *de minimis* rule is normally applied in premises liability cases to determine the duty that an owner or occupier of land owes to an invitee. The defendants have cited no cases applying the rule outside of the premises liability context. Nor has my research uncovered any such cases. Accordingly, there is no basis to conclude that the *de minimis* rule may abrogate a contractual promise to repair contained in a lease.

¶ 38    In any event, even assuming *arguendo* that the *de minimis* rule could apply to count 1 of the plaintiff's complaint in this case, I do not believe that the trial court could properly dismiss the complaint on that basis as a matter of law. As noted above, the application of the rule depends upon the facts of a particular case, and the existence of aggravating circumstances precludes the application of the rule. Here, the plaintiff has arguably alleged certain aggravating factors, including the defendants' contractual agreement to make all necessary repairs, defendants' history of making such repairs, Crystal's express representation that she would repair the defect at issue, Marlene's reliance on that representation, and the defendants' failure to repair the defect. Moreover, in their motion for summary judgment, the defendants stated that Marlene was 82 years old and the time of the accident, which Crystal confirmed in her deposition (portions of which the defendants attached to their motion to dismiss count 1 of the plaintiff's complaint).